**Andre BARBIER, Appellant,**

**v.**

**John BARRY, Appellee.**

**No. 15744.**

Court of Civil Appeals of Texas.

Dallas.

March 17, 1961.

Rehearing Denied April 14, 1961.

Currie, Kohen & Freeman, Dallas, for appellant.

Leake, Henry, Golden, Burrow & Potts and Hartman Hotz, Dallas, for appellee.

DIXON, Chief Justice.

Appellee John Barry, assignee of Andre Brullard, filed this suit against Andre Barbier, H. Charat (also known as Hanoh Charatponotski) and Sola Catalytic Company, a corporation. On a previous day we dismissed the appeal for want of jurisdiction because the judgment shown in the transcript did not make any disposition of the case as to one of the defendants, Sola Catalytic Company, a corporation.

The parties have joined in a motion for rehearing, and with our permission, have filed a supplemental transcript. The latter document reveals that the trial court upon joint motion of the parties has entered a judgment nunc pro tunc which disposes of all the parties to the suit. The judgment recites that the original judgment as uttered by the court disposed of all the parties, but that in the written judgment signed by the court, the take-nothing part of the court's decision with reference to the Sola Catalytic Company, a corporation, was inadvertently omitted.

The motion for rehearing is sustained. Our order of dismissal is set aside. We shall now proceed to consider the appeal on its merits. Sessions v. Whitcomb, Tex. Civ.App., 329 S.W.2d 470; Heavy Haulers, Inc. v. Nicholson, Tex.Civ.App., 277 S.W.2d 250.

In his amended petition appellee Barry sought (1) damages against all defendants for alleged breach and conspiracy to breach a licensing contract between Barbier and Brullard, and (2) payment of a

commission alleged to have been earned by Brullard for procuring another licensing contract for Barbier with Charat.

The case was tried to the court without a jury. Judgment was rendered in favor of appellee Barry, assignee, for (1) $10,000 against Barbier and Charat on the count alleging conspiracy and breach of contract, and (2) $3,650 against Barbier alone on the count alleging a commission earned by Brullard. Judgment was entered in favor of Sola Catalytic Company, a corporation, that Barry take nothing. Only Barbier has appealed.

### Judgment For $10,000

Appellant Barbier, a Frenchman residing part of the time in Mexico and part of the time in the United States, was in 1949 the owner of a process for the catalytic treatment of waters, which process and accompanying products were registered and marketed under the name of Sola and Solavite cells.

Either in December 1949 or in February 1950, appellant Barbier and Andre Brullard, also a Frenchman and also a resident of Mexico, entered into a contract while both of them were in San Francisco, California, whereby Barbier granted to Brullard an exclusive license for twenty years to "exploit" Barbier's processes and patents in the States of Washington, California, Oregon, Idaho, Nevada and Arizona.

The contract itself recites that it was executed in Mexico City on December 9, 1949, but the parties testified that it was not actually consummated until February 1950 in San Francisco, California.

Brullard was wholly unsuccessful in his efforts to sell the sola products. He was unable to obtain any orders at all. Finally Barbier cancelled his contract with Brullard. Some time later he entered into a contract with Charat, a native of Russia, but a citizen of France, whereby Charat took over the six states named in Brullard's contract. (Charat had already entered into a licensing contract with Barbier covering the other forty-two states). Brullard and his assignee claim that Barbier's cancellation, or attempt to cancel was wrongful and was brought about through a conspiracy between Barbier, Charat and Sola Catalytic Company, a Texas Corporation organized by Charat to market the sola products.

Neither Barbier, or Brullard speak English. The contracts and letters involved in the controversy are written in the French language. Despite the efforts of three interpreters, the language barrier presented difficulties in the way of exact translation and accurate interpretation.

In his first point on appeal Barbier asserts in substance that the court erred in rendering judgment against him since none of the facts, as distinguished from legal conclusions, found against him constituted a violation of any obligation he owed Brullard under the contract sued on.

The trial court made findings of fact and conclusions of law which include the following: (1) Brullard and Barbier entered into a written contract granting Brullard exclusive rights for twenty years to market sola products in the six states heretofore named, (2) the contract bound Barbier to furnish Brullard solavite cells until the demand for said cells within the territory granted became sufficient to install a factory in California to manufacture the cells, (3) the contract provided for the payment of specified royalties to Barbier, (4) Barbier and Charat entered in a conspiracy to prevent Brullard from receiving the benefits of the exclusive licensing agreement for the six states named, (5) prior to July 1, 1951 Brullard fully performed, or tendered full performance of the contract, (6) Barbier in violation of his contract with Brullard entered into a written contract with Charat covering the six states named in Brullard's contract, (7) Charat and his assignee, Sola Catalytic Company, have sold large quantities of sola products in the six states reaping large profits therefrom, which profits Brul-

lard would have made except for the conspiracy to breach Brullard's contract, (8) said profits amounted to $100,000 for the years 1951 and 1952, (9) Brullard will be damaged $100,000 per year for the eighteen years remaining of said twenty year contract period, (10) Charat has paid Barbier $12,000 per year as royalties without consent of Brullard, (11) at the time of the attempted cancellation by Barbier of Brullard's contract for alleged non-payment of royalties, Barbier was indebted to Brullard in a greater amount than such royalty payments, (12) appellee Barry was entitled to recover $10,000 as result of the wrongful conduct of Barbier and Charat.

The theory on which the damages were fixed at $10,000 was explained by the court in one of the conclusions of law as follows:

"* * * though there is not actual proof, based upon the cost of operation, sales executive ability, and other items not subject to specific proof, the Court feels that this case comes within the classification of cases where it is admitted and known that substantial damages resulted but are incapable of exact proof, the Court therefore applies the Rule that in such a situation substantial nominal damages may be awarded, and that is the theory upon which the $10,000 damages is fixed by the Court, as the Court feels is a substantial nominal amount of damages."

We have concluded that appellant Barbier is correct in his first point to the effect that the facts as distinguished from legal conclusions found against him do not constitute a violation of any obligation Barbier owed Brullard under the terms of the written contract sued on. An adequate discussion of the question requires us to set out material evidence in some detail.

We quote excerpts from the written contract between Barbier and Brullard:

"*As to the manufacture of the cells, they shall be manufactured by Mr. Andre Barbier in the U. S., if the number required by the volume of Mr.* *Andre Brullard's sales is sufficient to justify the establishment of a manufacturing shop in California.* Until such time, the cells shall be purchased either from the Societe Francaise de Labratories Solavite (English rendering of name: French Solavite Laboratories Co.), 90 Laugier Street, Paris, or from the Societe Solavite de Mexico (English rendering: Solavite Company of Mexico), 95 Sullivan Street, Mexico, D. F., at the wholesale export price, in accordance with the respective tariffs of each of these two companies. * * *. (Emphasis ours.)

"8. Beginning August 1, 1950, and throughout the duration of the present contract of exclusive license to exploit, Mr. Andre Brullard, or the American firm to which he may cede the said license, * * * shall at the end of each quarter pay Mr. Andre Barbier royalties fixed at 5 percent of the gross, rent or service of the units and cells, until the expiration of the contract of exclusive license to exploit. The minimum royalty to be paid is fixed for the first 6 months, that is, until February 1, 1951, at $600.00, that is, $300.00 at the end of each quarter. Beginning with this latter date, the minimum royalty to be paid annually is fixed at $1,800, and payable at the end of each quarter, until the expiration of the contract of exclusive license to exploit. Should the minimum royalty, indicated above not be paid to Mr. Andre Barbier at the end of each quarter, the licensee shall have two choices: a) Execute immediately the payment of the minimum royalties of the quarter just finished. b) Renounce the contract of exclusive license to exploit, which would be cancelled in full right by Mr. Andre Barbier, after three month's advance notice given by registered letter unavailing all without indemnity or recourse."

Under the terms of the contract Brullard was not given the right to manufacture

the cells himself, and he does not contend that he was given that right. The terms of the contract seem to us to be plain and unambiguous with reference to the supply of cells. Brullard was to obtain them from factories in France or Mexico, with the exception of a stated number for demonstration purposes. Barbier was not to furnish them until Brullard's sales were sufficient to justify the establishment of a factory in California.

Brullard himself recognized that such were the terms of his contract. We quote from his testimony:

"Q. All right, Did you ever request Mr. Barbier to furnish you with the cells, as provided in your contract? A. My contract said I had to buy the cells either in Paris or in Mexico City. * * * A. can I take a little more time for my answer * * * I was not supposed to obtain them from Mr. Barbier; I was supposed to get them from Paris or Mexico."

It was because of his inability to obtain cells manufactured in the United States that Brullard was unable to sell any sola products in his territory. We again quote from his testimony:

"A. I found myself faced by a problem. May I explain it? * * *

"Q. All right, explain the problem. A. In all the large American businesses which I contacted * * * I was asked where they could obtain the cells which have to be replaced periodically * * * and I answered in France or in Mexico. * * * and all the directors of this—important people in these big houses, told me as long as they do not manufacture in the United States it is very difficult to buy from you. * * *

"Q. All right, when you got to Mexico what did you do? A. I tried to find capitalists—men with capital— to take an interest in the business. I also wrote to France to obtain capital.

Everybody answered as long as I didn't have the possibility to manufacture the cells or that Mr. Barbier manufacture them himself in the United States— not Mr. Charat—I couldn't get any capital. I was depending on Mr. Barbier either in Mexico or in Paris. It was impossible to create a serious business based on the purchase of cells from a foreign country without any guaranty of price, without any price guaranty; and also no guaranty of delivery in case of war or any other conflicts."

Brullard attempted to obtain cells from Charat and Sola Catalytic Company in Dallas, Texas. Charat under his licensing contract for the other forty-two states had the right to manufacture and was manufacturing sola cells. But he refused to furnish cells to Brullard.

Meantime Brullard had not made any royalty payments to Barbier. It will be noted from the quoted portions of the contract that it provided for royalties of 5% of gross sales and a minimum for the first six months of $600 beginning August 1, 1950, and a minimum of $1,800 annually thereafter. In justification of his failure to pay the minimum royalties, Brullard claims the Barbier owed him a sum as commissions in excess of the amount of royalties. We shall treat the question of the commissions later in this opinion.

On November 15, 1950 Barbier wrote to Brullard in effect giving the latter until December 31, 1950 to bring his royalty payments down to date. This letter was not sent by registered mail.

In March 1951 Brullard came to Dallas where he talked to Barbier. Barbier informed him that he, Barbier, considered the contract cancelled.

In a letter dated March 21, 1951 sent by registered mail Barbier informed Brullard that since Brullard had not made his royalty payments by December 31, 1950 the clauses of their contract "find themselves

null and without object"—in other words cancelled.

On April 15, 1952 Brullard for a consideration of $2,000 assigned to appellee Barry all his rights and claims for damages and debt to Barbier.

On May 19, 1952, more than a year after cancellation of Brullard's contract, Barbier executed a second contract with Charat, whereby Charat added the six western states to the forty-two states covered in his prior contract, thus obtaining rights to manufacture and sell sola products in all of the forty-eight states which then comprised the United States.

■ Barbier did not do anything wrong when he refused to supply sola cells to Brullard. Under the express terms of their written contract Brullard was to obtain the cells from companies in France and Mexico. Since Brullard never sold any sola products at all there certainly was no obligation under the terms of their contract for Barbier to establish a factory in California.

■ Likewise, it must be said that Charat did not do anything wrong when he refused to supply cells to Brullard. There was no contract of any kind between Charat and Brullard. Charat, a manufacturer of sola cells, was free to sell or to refuse to sell at his pleasure. Portland Gasoline Co. v. Superior Marketing Co., 150 Tex. 533, 243 S.W.2d 823 (Syl. 12).

■ Since there was nothing wrongful in Barbier's or Charat's refusal to furnish cells to Brullard it was not wrongful under the circumstances for them to agree not to do so, especially since Brullard's contract with Barbier, as Charat well knew, expressly provided that Brullard should obtain cells from named factories in France and Mexico. Meurer v. Hooper, Tex.Civ.App., 271 S.W. 172 (Syl. 8); Brown v. American Freehold Land Mortgage Co. of London, 97 Tex. 599, 80 S.W. 985, 987, 67 L.R.A. 195; Green v. Bennett, Tex.Civ.App., 110 S.W. 108 (Syl. 4); 12 Tex.Jur.2d 337.

It was doubtless a hardship on Brullard that he had to look to factories in France and Mexico for a supply of sola cells, but that was a hardship which he assumed when he signed the contract. He was not entitled to be relieved of the express terms of his contract because its terms proved to be onerous.

■ Appellee takes the position that Barbier's letter of November 15, 1950 cannot be given effect as a notice of cancellation because it was not sent by registered mail.

We do not agree. It is undisputed that Brullard did receive the letter. That being so, the failure to send it by registered mail did not destroy its effectiveness as notice. It is also undisputed that Brullard did not make any royalty payments by December 31, 1950, nor has he offered to make any payments since that date. Barbier, more than three months later, by his registered letter of March 21, 1951 informed Brullard that he considered the contract cancelled. We think that the notice of cancellation and the cancellation were in substantial compliance with the terms of the contract. Southern Mortgage Co. v. McGregor, Tex.Civ.App., 279 S.W. 860 (Syl. 5), affirmed Tex.Com. App., 286 S.W. 1086; Deree v. Reliable Tool & Machine, Inc., 250 Wis. 224, 26 N.W.2d 673 (Syl. 7); Emerson-Brantingham Co. v. Lyons, 102 Kan. 733, 172 P. 513. See also McWaters v. Tucker, Tex.Civ. App., 249 S.W.2d 80, 83, which case though dealing with interpretation of a statute, not a contract, holds that failure to send a communication by registered mail was not a fatal defect.

Appellant's first point is sustained.

Appellant Barbier's second, third and fourth points are that the court erred in rendering judgment against Barbier because (1) there is no basis in the record for ascertaining the fact of damages, the testimony on this point being too speculative to permit of any recovery, (2) there was no competent evidence of the

amount of damages, if any, and (3) $10,000, under this record is far in excess of nominal damages.

As we have stated, Brullard testified that the reason he could make no sales of sola products was that he could not obtain sola cells from either Barbier or Charat, but under his contract he was required to look to factories in France or Mexico for his source of supply. As a result Barbier's and Charat's refusal to furnish cells he claims damages because of lost profits. As evidence of the profits he would have made he points to the profits made by Charat under his contract with Barbier.

■ We agree with appellant that under the evidence the alleged loss of anticipated profits by Brullard was too speculative to support a recovery of damages by appellee. The general rule in this State is that anticipated profits which might have been made from an unestablished business are not susceptible of being established by proof to that degree of certainty which the law demands. Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097; Silberstein v. Laibovitz, Tex. Civ.App., 200 S.W.2d 647, 650; Burge Ice Machine Co. v. Strother, 197 Tenn. 391, 273 S.W.2d 479. The rule is the same in California, where the contract here involved was executed. California Press Mfg. Co. v. Stafford Packing Co., 192 Cal. 479, 221 P. 345, 32 A.L.R. 114; 1 A.L.R. 156, 99 A.L.R. 938; 15 Am.Jur. 574; 25 C.J.S. Damages § 42, pp. 518–519.

■ It is true that lost profits will not be denied merely because a business is new if factual data is available to furnish a basis for computation of probable losses. For example see Pace Corporation v. Jackson, 155 Tex. 179, 284 S.W.2d 340, 348, involving a new business actually established and operated for a while, but later discontinued because of breach of contract; Jennings v. Lamb, 201 Tenn. 1, 296 S.W. 2d 828, involving a new business which had not yet made an actual profit but had obtained firm orders for products; and

Goodman v. Dicker, 83 U.S.App.D.C. 353, 169 F.2d 684, in which the court allowed recovery of $1,150 spent preparing for business. But no data is available in this case. Brullard never obtained any orders. There is no evidence of the amount of expenses, if any, he incurred in preparing to do business. Charat's profits furnish no basis for computation, for Charat's contract permitted him to manufacture his own cells, while Brullard's contract did not, which fact as shown by the testimony of Brullard himself, was a material difference.

■ We also agree that $10,000 is excessive as nominal damages. "Nominal damages are those recoverable where a legal right is to be vindicated against an invasion that produced no actual loss or where, from the nature of the case, some injury has been done the amount of which the proofs fail to show." 17 Tex.Jur.2d § 4, p. 81. We have not been cited to an instance and we know of no instance when as much as $10,000 has been allowed as nominal damages or "substantial nominal damages". 17 Tex.Jur.2d § 7, p. 84. Appellant's second, third and fourth points are sustained.

### Judgment For $3,650.

In his amended petition appellee alleges that he had a written contract with Barbier whereby he was to be paid 10% commission on all payments made to Barbier arising out of licensing contracts procured by Brullard for Barbier in the other 42 states. Brullard claims he procured a contract for Barbier with Charat, and that therefore he was entitled, as a commission, to be paid 10% of the royalties paid by Charat to Barbier. It was on this count that judgment was entered against Barbier alone for $3,650.

The undisputed testimony shows, and the court found, that this alleged contract was partly oral and partly written.

The written part of the contract consists of a letter in the French language.

Two translations of this letter, substantially, but not exactly alike, were introduced in evidence. We here reproduce one of the translations:

"Societe Anonyme Francaise Des Laboratoires

"Solavite

"90, Rue Laugier, Paris

"December 9, 1949

"Mr. Andre Brullard

"66 Avenida Londres

"Coyoacan, D. F. Mexico

"Dear Sir:

"In accordance with our different conversations, I herewith confirm that our Board of Directors has designated you to effect a prospecting trip to the United States of America, for the purpose of studying the market of this country.

"Your trip will have as an objective:

"1. To ascertain the possibilities of selling and importing Solavite material.

"2. To give us a report on the possibilities of establishing there a branch, or of installing there shops for manufacturing purposes.

"3. To inform us of the possibilities of the sale of our different patents and to look for industrialists interested in such a purchase.

"We hope that your trip will be fruitful and are,

"Very truly yours,

"President and Director General

"(signed) Andre Barbier."

The oral part of the alleged agreement as testified to by Brullard was a statement made to Brullard by Barbier that Brullard's commission would be 10% of money received by Barbier from Charat.

Appellant's fifth, sixth, seventh and eighth points are that the court erred in rendering judgment for $3,650 against Barbier because (5) the proof shows there was no contract written, oral or partly both, between Brullard and Barbier in regard to commissions (6) the court should have sustained appellant's plea of 2 year's limitations, (7) Brullard's own testimony revealed that he had applied the amount of commissions claimed by him to the extinguishment of his obligation to pay Barbier minimum royalties, and (8) though appellee declared on a contract in writing, he was permitted, over Barbier's objection, to recover on a contract partly oral and partly in writing.

■ The letter as translated certainly conveys the idea that it was written in behalf of a corporation, not in behalf of Barbier individually, and there is testimony to that effect. However, there is testimony from one of the translators that the French word "Societe" is broad enough to include a corporation, a partnership or an individual. There is testimony also that if it was a corporation Barbier owned all the stock. And Brullard testified that he dealt with Barbier personally, and was to receive a commission of 10% of all money paid to Barbier by Charat. So we cannot say that the undisputed testimony proves that Brullard's contract for commissions was with a corporation, not with Barbier personally.

Appellant asserts that even if it be considered that Barbier, not a corporation, was bound by the contract with Brullard for commissions, any indebtedness thereunder is barred by the two year statute of limitations. Appellee on the other hand claims that the four year statute applies.

■ It is admitted that the contract was partly oral and partly written. Such agreements are considered oral contracts for purposes of limitations, hence we must apply the two year statute in this case. Purdin v. Jenkins et al., Tex.Civ.App., 337 S.W.2d 418; Luglan v. Tomlin, Tex.Civ. App., 287 S.W.2d 188; Cannaday v. Martin, Tex.Civ.App., 98 S.W.2d 1009.

It has been stipulated that suit was filed May 7, 1953. It has also been stipulated that payments totalling $29,725 were made by Charat to Barbier between May 10, 1950 and February 10, 1951. Since there is some disagreement between appellant and appellee as to dates of payments

as agreed upon in the stipulation, we quote that part of the stipulation:

"(Conference Between Counsel For Defendants)
"Mr. Hoppenstein: The 10th of May, 1950, $8,000.00; July 1, $1,686.00; August 19, 1950, $10,000.00; July 31, $1400.00; August 9, $1,000.00; August 24, $439.00; that totals $25,525.00. On August 10, 1950, through February 10, 1951, $4,200.00.
"Mr. Golden: What is the total of that to February 10, 1951?
"Mr. Hoppenstein: $29,725.00.
"Mr. Golden: $29,725.00?
"Mr. Hoppenstein: Yes.
"Mr. Golden: To February 10?
"Mr. Currie: 1951.
"Mr. Golden: 1951?"

The testimony shows that Barbier was in Texas from January 10, 1951 until January 1954, except for about one and one half months when he was in Mexico. Under these circumstances we must hold that Brullard's claim against Barbier for commissions was barred under the two-year statute of limitations.

In our opinion there is still another reason why the judgment against Barbier for $3,650 cannot stand. Brullard claimed that he applied the commissions due him by Barbier in payment of the minimum royalties due by him to Barbier. And the court so found. Of course, Brullard is not entitled to both, that is: credit for the commissions against his debt to Barbier and at the same time a money judgment against Barbier for the same commissions. To allow both the credit and the money judgment would be to allow a double recovery.

Appellant's fifth point is overruled. His sixth, seventh and eighth points are sustained.

■■■ Since the claimed liability of Charat was based on an alleged conspiracy with Barbier against Brullard, the judg-

ment against Barbier and Charat is joint. It is not severable. Certainly the liability of one of them for conspiracy is dependent on that of the other. That being so, the judgment for conspiracy must be reversed in its entirety including the judgment against Charat. Henger v. Cotton, 159 Tex. 139, 316 S.W.2d 719, reversing in part Cotton v. Henger, Tex.Civ.App., 312 S.W.2d 299; State v. Standard Oil Co., 130 Tex. 313, 107 S.W.2d 550; State v. Racine Sattley Co., 63 Tex.Civ.App. 663, 134 S.W. 400; Lipscomb v. McCart, Tex. Civ.App., 295 S.W. 245; Mays & Mays v. Flattery, Tex.Civ.App., 252 S.W. 860; Miller v. First State Bank & Trust Co., Tex. Civ.App., 184 S.W. 614; Mosler Safe Co. v. Atascosa County, Tex.Civ.App., 184 S. W. 324; Garrett v. A. G. McAdams Lbr. Co., Tex.Civ.App., 163 S.W. 320; Ferguson v. Dickinson, Tex.Civ.App., 138 S.W. 221.

The judgment of the trial court as to Barbier and Charat is reversed in its entirety, and judgment is here rendered that appellee take nothing against Barbier or Charat. The judgment in favor of Sola Catalytic Company, a corporation will remain undisturbed.