**NORTEX OIL & GAS CORPORATION,** Appellant,

v.

**Max D. CLARK et al., Appellees.**

No. 16233.

Court of Civil Appeals of Texas.

Dallas.

July 5, 1963.

Lyne, Blanchette, Smith & Shelton, Fritz Lyne and Erich F. Klein, Jr., Dallas, for appellant.

Fred Erisman and Henry H. Harbour, Longview, for appellees.

DIXON, Chief Justice.

This appeal presents a venue question involving Subd. 7, Art. 1995, Vernon's Ann. Civ.St.

Appellant Nortex Oil & Gas Corporation brought suit in Dallas County against Max D. Clark, W. E. Mitchell, Jr., Tom Cook, Joe W. Hart and G. U. Yoachum, residents of Gregg County, Texas, alleging conspiracy and fraud in the sale by Clark to Nortex of his .09375 working interest in the Annie Dickson Oil and Gas Lease. Nortex alleges that at the time of the sale Clark knew the interest was worthless because the only oil well on the lease was a "slant well", that is, the well deviated from a vertical line from the surface to subsurface sands to such an extent that its bottom was on a different lease than the Annie Dickson lease. This well is known as Well No. 5.

Appellees filed pleas of privilege asking transfer of the suit to Gregg and Upshur Counties, Texas. Appellant filed a controverting affidavit alleging that fraud was committed in Dallas County. The trial court sustained the pleas of privilege and ordered the case transferred to Gregg County for trial.

The substance of appellant's first six points on appeal is that the undisputed evidence shows, or the preponderance of evidence shows that an act of fraud was committed in Dallas County and there is no evidence to support any theory of appellees

upon which judgment could have been rendered.

■ Findings of fact and conclusions of law were not filed or requested. We are therefore required to affirm the judgment of the trial court upon any theory of the case finding support in the evidence. Texarkana Water Supply Corp. v. L. E. Farley, Tex.Civ.App., 353 S.W.2d 885; Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97; Ulrich v. Krueger, Tex.Civ.App., 272 S.W. 824.

■ A study of the record has convinced us that there is ample evidence to support the trial court's judgment sustaining appellees' pleas of privilege. We certainly cannot say that as a matter of law the evidence conclusively shows fraud committed by Clark in Dallas County. At best appellant raised only fact issues as to when and by whom Well No. 5 was slanted, and that Clark knew that the well was slanted when he sold appellant his interest in 1961. The trial court's implied findings on these and other fact issues are binding on this court.

To present even a summary of all the evidence would extend this opinion to an unreasonable length. However we believe a brief survey of some of the evidence is necessary to an understanding of the controversy.

There was no privity of contract between Nortex and the other appellees. They had disposed of their interests several years prior to 1961. The only privity of contract was between Clark and Nortex. Nevertheless, Nortex charges that all the appellees were involved in a conspiracy to drill and did drill slant oil wells, including Well No. 5. Appellant admits that its view is supported only by circumstantial evidence and that the evidence presents a "jigsaw" puzzle.

Well No. 5 was drilled in August 1956. Appellee Yoachum was the driller. Appellees Clark, Mitchell, Hart and Cook were the original lessees. Subsequent to the completion of the well all or portions of their interests in the lease were transferred to other parties. In 1957 appellees Cook and Clark assigned one-half of their interest and Mitchell assigned all of his interest to Ebro Oil Company. Clark retained a working interest of .09375. In February 1961 Nortex purchased Ebro Oil Company's interest in a number of oil and gas leases, including Ebro's interest in the Annie Dickson Lease.

Sometime in May 1961, following the purchase by Nortex from Ebro, Miles McDow, land man for Nortex, upon instructions from James M. Wendover, President of Nortex, contacted appellee Clark in Longview, Texas for the purpose of buying Clark's interest in these leases, including the Annie Dickson Lease. There is no evidence that Clark wanted to sell. The evidence is that Nortex wanted to buy and sought out Clark for that purpose.

McDow offered $80,000 for Clark's interests. Clark refused the offer, insisting on $110,000. A few days later McDow in Dallas called by long distance telephone to Clark in Longview and offered to pay $90,000 for Clark's interests in the properties. Clark refused the offer, stating according to McDow, "No, they're worth more than that." Subsequently McDow in Dallas County again called Clark in Longview by long distance telephone and made a third offer, this time for $95,000. Clark, at a later conference in Dallas, accepted this third offer.

Appellant says that Clark, in Longview, committed an act of fraud in Dallas County when he told McDow, in Dallas, over long distance telephone, that "they're worth more than that." Appellant contends that at that time Clark knew that the No. 5 Well on the Annie Dickson lease was a slanted well and was worthless. Appellant further says that throughout their negotiations Clark committed fraud in Dallas County by remaining silent when it was his duty to inform McDow that the No. 5 Well was slanted.

There is evidence that Nortex did not rely on any representations that may have been made by Clark. For several months in connection with its purchase of the Ebro interests appellant conducted an investigation on the leases, including the Annie Dickson Lease. James C. Holcomb, appellant's Vice-President, a graduate petroleum engineer, examined the lease and Well No. 5, his checking and testing continuing over a period of approximately ten months.

Hudnall & Pirtle, consulting engineers and geologists, made reports on the leases in 1957, 1959, 1960 and 1961. Two of these reports were obtained by appellant. It is not shown that any of appellees personally furnished information to Hudnall in connection with these reports, though at the time of one report Clark was a member of a firm operating the Annie Dickson Lease.

Between the time it purchased the Ebro interests and the time it purchased the Clark interests, Nortex obtained additional reports from H. J. Grury and Associates, engineers and geologists. These reports were based on field inspection made by said firm and well tests made by appellant's personnel.

McDow, appellant's land man, was the only person who saw, or negotiated with Clark in regard to the purchase of Clark's interest. He testified that he could not say that Clark knew Well No. 5 was deviated at the time of their negotiations.

■ In June 1962 appellant wrote a letter to its stockholders containing this statement: "All the wells owned by this company in the East Texas Field, totalling a hundred and five, were purchased in recent transactions based on engineering reports prepared by nationally recognized consulting engineers, that is, Hudnall and Pirtle, and H. J. Grury and Associates. * * * These engineers utilized directional surveys and elec-

trical logs prepared by some of the largest service corporations in the business. The engineers found no evidence at the time that all wells purchased by Nortex had not been properly drilled." A directional survey is a method for determining whether a well is deviated and if so the extent of the deviation.

It was not until 1962 that it came to light that Well No. 5 was deviated. When was the deviation accomplished? Peddy, assistant sales manager of Sperry-Sun Well Surveying Company, which discovered the deviation, testified that he did not know the condition of the well when drilled in 1956, or when Ebro took over in 1957. He testified that he could not dispute the accuracy of the completion reports made when the wells were drilled.

According to the evidence neither Clark nor any of the other appellees had anything to do with the actual operation of Well No. 5 after Ebro Oil Company took over in 1957.

Appellant's first six points on appeal are overruled.

■■ In its seventh and eighth points appellant assails the court's action in transferring the suit as to Clark to Gregg County instead of Upshur County. The evidence shows that Clark maintained residences in both Gregg and Upshur Counties. This is permissible for venue purposes. McDonald, Tex.Civ.Practice, Vol. 1, p. 324. Further, the liability of conspirators is joint. Barbier v. Barry, Tex.Civ.App., 345 S.W. 2d 557, 565. The court did not err in transferring the suit as to Clark to Gregg County along with the cause of action against the other joint defendants. Appellant's seventh and eighth points are overruled.

The judgment of the trial court is affirmed.