# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 15, 2023

Lyle W. Cayce
Clerk

_____

No. 23-20023

_____

Elmen Holdings, L.L.C.,

*Plaintiff—Appellee*,

*versus*

Martin Marietta Materials, Incorporated,
*Successor by Merger to Texas Industries, Incorporated*,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-3293

_____

Before Higginbotham, Smith, and Elrod, *Circuit Judges.*

Jerry E. Smith, *Circuit Judge*:

This appeal concerns a sand and gravel mining lease executed in 1970. The original leaseholder transferred its interest to Martin Marietta Materials, Inc. ("Martin Marietta"), in 2014, and Elmen Holdings, L.L.C. ("Elmen"), acquired title to the underlying land in 2018. Elmen contends that Martin Marietta did not make required royalty payments to it or prior lessors; Elmen sought a declaration that the lease had terminated. Both parties moved for summary judgment, and a magistrate judge recommended that the district court grant Elmen's motion and deny Martin Marietta's. The district court

No. 23-20023

adopted that recommendation.

Though we disagree with the magistrate judge's and district court's reasoning, they reached the correct result, and we AFFIRM the summary judgment for Elmen and AFFIRM the denial of summary judgment for Martin Marietta.

I.

In 1970, Wilma and Minton Minarcik leased a portion of their land to Texas Industries, Inc., to mine sand and gravel ("the Gravel Lease"). The Gravel Lease was to extend "for as long as merchantable materials are mined or produced from the leased premises, or for as long as Lessee shall pay the advance minimum royalty as hereinbelow specified."[1] Paragraph six of the lease specified the advanced minimum royalty payments that would be due:

> Commencing on April 16, 1972, and on or before said day and month of each successive year hereunder, Lessee shall pay or tender to Lessor, annual advance royalties as follows:
> (a) $2,500 per year for the years 1972 and 1973; then,
> (b) $4,000 per year for each year thereafter up to and including the year during which mining or production operations are commenced on any portion of the land; then,
> (c) $3,000 per year for each year following the year in which mining or production operations are begun on any portion of said land, until this agreement is terminated.

No mining operations ever took place on the Minarcik land, meaning that—after 1973—the lease could be maintained only by the payment of $4,000 on or before April 16 each year.

_____

[1] Paragraph two of the lease reads in full, "Subject to the other provisions herein contained the term of this lease shall be for as long as merchantable materials are mined or produced from the leased premises, or for as long as Lessee shall pay the advance minimum royalty as hereinbelow specified."

No. 23-20023

Paragraph six of the Gravel Lease included a notice-and-cure provision:

> Notwithstanding anything contained in this lease to the contrary, should Lessee fail to pay or tender any amount of advance royalties when due, then lessor shall notify Lessee in writing of such failure and this lease shall not terminate unless and until Lessee shall have failed to pay or tender the amount of advance royalties due within ten (10) days following Lessee's receipt of such notice from Lessor.

That paragraph also made clear that "[n]otwithstanding the death of the lessor, or any of them, the payment of royalties when due hereunder within the time and in the manner provided herein shall be binding upon the heirs, executors, successors, assigns and legal representatives of Lessor." Paragraph sixteen of the Gravel Lease required that all notices of missed payments be in writing and that all payments and notices "shall be deemed to have been properly given and made at the time when delivered in person or at the time when posted by certified or registered mail."

Martin Marietta acquired Texas Industries's leasehold interest in 2014. At that point, the ownership of the land had splintered, but Wilma Minarcik was still alive and owned a portion.[2] Wilma died in early 2017, and her remaining portion passed to her heirs: Sam and Gary O'Callaghan. Martin Marietta attempted to pay royalties to Wilma Minarcik on April 12, 2017, unaware that she had died. On May 15, 2017, Gary O'Callaghan sent an email to Martin Marietta requesting that it "send the 2017 royalty payment." Martin Marietta never sent this payment because neither Gary nor Sam ever gave it a copy of their W-9 tax forms.

---

[2] Martin Marietta had been paying the royalties in a pro-rata share to the different owners of the Minarcik land.

No. 23-20023

Elmen acquired the land from the O'Callaghans on August 10, 2018. Elmen then sued Martin Marietta in Texas state court seeking a declaration that the failure to pay had terminated the Gravel Lease. Martin Marietta removed the case to the Southern District of Texas, where the parties proceeded through discovery and cross-moved for summary judgment. Neither party disputed that paragraph six's notice-and-cure provision applied to any missed or late royalty payments under the Gravel Lease. Elmen averred that the undisputed facts showed that the Gravel Lease had terminated because Martin Marietta had missed royalty payments, had been adequately notified, and had failed to cure. Martin Marietta contended that the Gravel Lease was still in force because it had made all needed royalty payments or had cured any late ones, and, alternatively, that it had never received the notice required by paragraphs six and sixteen of the lease.

The magistrate judge recommended that the district court grant Elmen's motion for summary judgment and deny Martin Marietta's. But the recommendation did not address the parties' contentions regarding whether Martin Marietta had satisfied the notice-and-cure provision. Rather— despite the parties' agreement that the notice-and-cure provision applied— the magistrate judge determined that, given the absence of mining on the Minarcik land, the Gravel Lease terminated automatically upon a late royalty payment. Because Martin Marietta had been late with several royalty payments, the magistrate judge recommended that the district court enter summary judgment for Elmen. The district court adopted that recommendation in a one-page order.[3]

_____

[3] Because the district court adopted the magistrate judge's report in full, all references to the magistrate judge's analysis are synonymous with references to the district court's final order and judgment.

4

II.

Martin Marietta first contends that the magistrate judge violated the principle of party presentation by ignoring the parties' agreement that paragraph six's notice-and-cure provision applied to Martin Marietta's alleged missed royalty payments. We disagree.

"In our adversarial system of adjudication, we follow the principle of party presentation." *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). That means "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). Therefore, we "normally decide only questions presented by the parties." *Sineneng-Smith*, 140 S. Ct. at 1579 (internal quotation marks omitted). We review a district court's decision to ensure that it has not "departed so drastically from the principle of party presentation as to constitute an abuse of discretion." *Id.* at 1578.

Martin Marietta's contention centers on the fact that the parties agreed the Gravel Lease would terminate for failure to pay royalties only upon Elmen's provision of notice and Martin Marietta's failure to cure. The only issues the parties presented to the district court were (1) whether Martin Marietta in fact had missed its royalty payments, (2) whether Elmen had provided sufficient notice of any non-payment, and, if so, (3) whether Martin Marietta had cured any non-payment. The magistrate judge nonetheless disposed of the case by determining that the lease had terminated automatically upon Martin Marietta's nonpayment. In Martin Marietta's view, the magistrate judge ignored how the parties had "frame[d] the issues" and instead decided the summary judgment motions on an issue "framed by the [court]." *Id.* at 1578–79.

That contention has some merit, but unlike the Ninth Circuit in

*Sineneng-Smith*, the magistrate judge did not "depart[] so drastically" from the issues and arguments presented "as to constitute an abuse of discretion." *See id.* at 1578. Elmen alleged that the Gravel Lease had terminated because of Martin Marietta's failure to make timely royalty payments. One of Martin Marietta's main responses was that, even if it had missed payments, Elmen did not give it notice and an opportunity to cure as required by paragraph six of the Gravel Lease. The magistrate judge resolved that dispute by construing the Gravel Lease to determine that paragraph six's notice-and-cure provision applies only to royalties paid under paragraph 6(c) but not to royalties paid under 6(b) and 6(a). That construction meant Martin Marietta, which was paying royalties under 6(b), had no right to notice or cure: The lease terminated automatically after a late royalty payment under paragraph two.

Thus, the magistrate judge recommended granting Elmen's motion for summary judgment because Martin Marietta had been late on several royalty payments. The magistrate judge did not "radical[ly] transform[]" this case to such an extent as to constitute an abuse of discretion; she merely took a different route than Martin Marietta and Elmen had suggested to "decide . . . questions presented by the parties." *Id.* at 1579, 1582. Therefore, the magistrate judge did not violate the party presentation principle by interpreting the Gravel Lease to terminate automatically upon a missed royalty payment, even if that interpretation was contrary to the parties' reading of their contract.

III.

Martin Marietta next contends that the magistrate judge erred in construing the Gravel Lease to terminate automatically upon a missed royalty payment. We agree. The magistrate judge's interpretation of the Gravel Lease contravenes the lease's plain language by subordinating paragraph six's notice-and-cure provision to paragraph two's termination provision.

No. 23-20023

"On appeal, a district court's interpretation of a contract is a matter of law reviewable *de novo*." *Am. Totalisator Co. v. Fair Grounds Corp.*, 3 F.3d 810, 813 (5th Cir. 1993). We review "the record independently and under the same standard that guided the district court." *Id.* "In a diversity case involving the interpretation of a contract, we apply the substantive law of [Texas] . . . according to the general principles of contract interpretation articulated by the Texas Supreme Court." *McLane Foodshare, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013).

In Texas, "[a] mineral lease is the conveyance of a determinable fee interest in land" and "does not in all respects create the relationship of landlord and tenant." *Parker v. Standard Oil Co.*, 250 S.W.2d 671, 680 (Tex. Civ. App.—Galveston 1952, writ ref'd n.r.e.). That fee interest may be subject to three types of qualifications: (1) a special limitation, (2) a condition subsequent, or (3) a covenant.[4]

"A special limitation . . . provides that the lease will automatically terminate upon the happening of a stipulated event." *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 606 (Tex. 2018). Texas courts have consistently held that provisions stating that the lease's duration shall be "for as long as" certain conditions are met creates a special limitation on the leasehold interest.[5] But a lease will not create a special limitation "unless

---

[4] A.W. Walker, Jr., *The Nature of the Property Interests Created by an Oil and Gas Lease in Texas*, 8 Tex. L. Rev. 483, 483–84 (1930). Texas courts typically apply the same principles of law to a mining lease as they do to an oil-and-gas lease, so any oil-and-gas precedents are applicable. *See, e.g.*, *Cole Petro. Co. v. U.S. Gas & Oil Co.*, 41 S.W.2d 414, 417 (Tex. 1931); *Roach v. Chevron U.S.A., Inc.*, 574 S.W.2d 200, 203 (Tex. Civ. App.—San Antonio 1978, no writ).

[5] *See, e.g.*, *Clark v. Perez*, 679 S.W.2d 710, 712 (Tex. App.—San Antonio 1984, no writ) (holding that a lease term stating that the lease "shall be for . . . as long thereafter as oil, gas or other minerals [are] produced" created a special limitation); *Discovery Operating*, 554 S.W.3d at 597 (stating that a lease term "as long as oil or gas is produced" will termin-

[its] language is so clear, precise, and unequivocal that [the court] can reasonably give it no other meaning." *Endeavor Energy Res., L.P. v. Energen Res. Corp.,* 615 S.W.3d 144, 148–49 (Tex. 2020) (internal quotation marks omitted).

"A condition subsequent designates an event which, when it happens, gives the grantor the right to terminate the estate by reentry." *Field v. Shaw*, 535 S.W.2d 3, 5 (Tex. Civ. App.—Amarillo 1976, no writ); *see also W.T. Waggoner Est. v. Sigler Oil Co.*, 19 S.W.2d 27, 30 (Tex. 1929). A condition subsequent is typically created by language "allowing the lessor the option of terminating the lease in the event of the lessee's failure to pay royalty," as distinguished from language that "terminates the lease, without the necessity of re-entry." *XTO Energy, Inc. v. Pennebaker*, No. 07-10-00396, 2011 Tex. App. LEXIS 10194, at *6–7 (Tex. App.—Amarillo Dec. 29, 2011, no pet.); *Waggoner*, 19 S.W.2d at 30.

Finally, a covenant is a provision in a lease the breach of which "does not automatically terminate the estate, but instead subjects the breaching party to liability for monetary damages." *See Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex. 1989). A covenant is created when the lease imposes an obligation on the parties, but the breach of that obligation gives rise only to an action for damages. *Cf. Waggoner*, 19 S.W.2d at 29.

Paragraph two of the Gravel Lease, viewed in isolation, creates a special limitation on Martin Marietta's leasehold interest. It states that the Gravel Lease was to extend "for as long as merchantable materials are mined or produced from the leased premises, or for as long as Lessee shall pay the advance minimum royalty as hereinbelow specified." The "for as long as"

---

ate automatically if production permanently ceases). Texas courts will sometimes refer to such provisions as "habendum clauses." *See id.*

language so clearly creates a special limitation on the Gravel Lease under Texas law that we "can reasonably give it no other meaning." *See Energen*, 615 S.W.3d at 148 (cleaned up). Thus, paragraph two causes Martin Marietta's leasehold estate to terminate automatically unless Martin Marietta is mining or producing merchantable materials or paying the required royalties. Because no mining operations ever took place on the Minarcik land, paragraph two—read independently of any other provision—causes the leasehold estate to terminate upon a missed royalty payment automatically.

But we cannot view paragraph two in a vacuum: It must be construed in light of the notice-and-cure provision of paragraph six.[6] Paragraph two says that it is "[s]ubject to the other provisions herein contained[,]" and the notice-and-cure provision says that it applies "[n]ot withstanding anything contained in this Lease to the contrary." The best reading of the Gravel Lease is that paragraph six's notice-and-cure provision modifies paragraph two's creation of a special limitation such that, upon a missed royalty payment, the lease does not terminate until Martin Marietta has been notified and has failed to cure.[7]

The magistrate judge determined that paragraph six's notice and cure provision applied to royalties paid under paragraph 6(c) but not to royalties paid under 6(b) and 6(a). That construction defies the language of the Gravel Lease. The notice-and-cure provision makes no distinction between the various categories of royalty payments and instead applies to "any amount of

---

[6] *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 746–47 (Tex. 2020) (explaining how the Texas Supreme Court has "cast off" rules of interpretation like "giving . . . [a] habendum clause [] absolute priority over other clauses." (cleaned up)).

[7] *Cf. Pathfinder Oil & Gas Co. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019) ("[A] specific contract provision controls over a general one.").

advanced royalties when due."[8]

The magistrate judge makes two main contentions in support of her interpretation.[9]  First, she avers that if the parties had intended the Gravel Lease to continue absent mining and royalty payments, they could have included express language demonstrating their intent to keep the lease in force. But paragraph six contains express language demonstrating that intent.  It states explicitly, "This lease shall not terminate unless and until Lessee shall have failed to pay or tender the amount of advanced royalties due within ten (10) days following Lessee's receipt of such notice from Lessor."  That language demonstrates a clear intent to keep the lease in force "unless and until" Martin Marietta has been notified of a missed payment and has failed to cure.

Second, the magistrate judge stated that "[t]o interpret the notice provision in Paragraph 6 to preclude automatic termination of the lease term would render Paragraph 2 meaningless."  No. 4:19cv3293, 2022 U.S. Dist. LEXIS 230446, at *33 (S.D. Tex. Nov. 22, 2022) (magistrate judge's amended memorandum and recommendation).  As described above, paragraph two creates a special limitation—not a covenant or a condition subsequent—on Martin Marietta's leasehold interest, meaning that upon the happening of the stated conditions the lease will terminate automatically. *See*

---

[8] The magistrate judge's view that the Gravel Lease can never terminate automatically when royalties are paid under 6(c) is not correct.  Royalties under 6(c) are due only in the years following the commencement of mining operations.  The lease cannot terminate when mining or production of materials is ongoing, regardless of what royalties are paid. That means, when mining operations are ongoing, paragraph 6(c) functions only as a covenant, not a special limitation.  But if mining operations have started and then stopped, royalties under 6(c) will still be due, with 6(c) functioning as a special limitation, given that there is no mining or production continuing the lease in the absence of payment.

[9] Elmen does not engage with this issue on appeal and just urges us to affirm for all the reasons stated by the magistrate judge.

*Discovery Operating,* 554 S.W.3d at 606.

Far from being meaningless, paragraph two ensures that—in the absence of both mining operations and relevant royalty payments—Martin Marietta's leasehold interest terminates automatically ten days after receiving notice of non-payment from Elmen.  If paragraph two did not exist, Elmen would have to either take affirmative steps to end the lease (if the remainder of the lease is read as creating condition subsequent) or settle for a damages suit (if read as a covenant) upon Martin Marietta's failure to cure.

In sum, the magistrate judge erred by holding that the Gravel Lease's notice and cure provision applies only to royalty payments due under paragraph 6(c) and not to payments due under paragraph 6(a) or 6(b).  On *de novo* review, the plain language of the Gravel Lease shows that paragraph six's notice and cure provision applies to all types of royalty payments.  Therefore, the lease terminates only if Martin Marietta misses a royalty payment, receives notice of non-payment, and fails to cure the non-payment within ten days.

## IV.

We now turn to the issue the parties presented to the district court originally: whether the Gravel Lease had terminated because Martin Marietta had missed royalty payments, had been adequately notified, and had failed to cure.  Because Martin Marietta did not make timely royalty payments in 2017, received notice of this failure, and failed to cure its non-payment within the Gravel Lease's 10-day grace period, the district court properly granted Elmen's motion for summary judgment.[10]

---

[10] We "can affirm the granting of summary judgment on any ground supported by the record, even where the district court granted summary judgment based upon erroneous reasoning." *Cherokee Pump & Equip., Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994)

"When parties file cross-motions for summary judgment, we review each party's motion independently, viewing evidence and inferences in the light most favorable to the nonmoving party." *Green v. Life Ins. Co. N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (internal quotation marks omitted).  Summary judgments are reviewed *de novo*.  *See id.*  A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is genuine if "the evidence is such that a reasonable juror could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The interpretation of a contract is a question of law.  *Fair Grounds*, 3 F.3d at 813.  Whether a contract provision requires strict or substantial compliance with its terms is governed by state law in diversity cases.  *Cf. Rogers v. Aetna Cas. & Sur. Co.*, 601 F.2d 840, 844 (5th Cir. 1979).  But where state substantive law requires substantial compliance, "whether a party has substantially complied with the terms of a contract presents a pure question of fact that the trier of fact alone may decide."  *Turriull v. Life Ins. Co.*, 753 F.2d 1322, 1326 (5th Cir. 1985).  That is true even in diversity cases because "where federal rules would entitle litigants to a jury determination of a particular issue, the court will not yield to a state practice to the contrary." *Nunez v. Super. Oil Co.*, 572 F.2d 1119, 1125 (5th Cir. 1978).[11]

Whether a party has breached a contract is also governed by state law in diversity cases. *See Ziegler v. Champion Mortg. Co.*, 913 F.2d 228, 229 (5th Cir. 1990).  "Where the evidence is undisputed regarding a person's conduct

---

(internal citation omitted).

[11] Texas law also treats whether a party has substantially complied with the terms of a contract as a question of fact.  *See James Constr. Grp., L.L.C. v. Westlake Chem. Corp.*, 650 S.W.3d 392, 404–05 (Tex. 2022).

under a contract, the court alone must determine whether such conduct shows performance or a breach of a contractual obligation." *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 868 (Tex. App.—Austin 2001, pet. denied).

*1. Martin Marietta did not pay or tender royalties in 2017.*

The Gravel Lease requires Martin Marietta to pay or tender annual royalties by April 16 of each year. In Texas, payment occurs when "money passes from the debtor to the creditor for the purpose of extinguishing the debt, and the creditor [receives] it for the same purpose." *Rowlett v. Superior Ins. Co.*, 325 S.W.2d 921, 923 (Tex. Civ. App.—Eastland 1959, writ ref'd n.r.e.). "A tender is an unconditional offer by the debtor to pay another . . . a sum not less in amount than that due on a specified debt or obligation." *Baucum v. Great Am. Ins. Co.*, 370 S.W.2d 863, 866 (Tex. 1963). Payment to a person having no authority to receive it does not discharge the debt. *See Bluntzer v. Dewees*, 15 S.W. 29, 30 (Tex. 1891); 58 Tex. Juris. Payment § 29. Likewise, tender of payment must be to whom a debt or obligation is due. *Arguelles v. Kaplan*, 736 S.W.2d 782, 784 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e); 58 Tex. Juris. Payment § 6.

If Martin Marietta misses a royalty payment, Elmen is required to notify it in writing, and, upon such notification, Martin Marietta has ten days to cure. In Texas, "substantial compliance is the appropriate standard when evaluating whether a party complied with a contractual notice condition." *James*, 650 S.W.3d at 405. A party substantially complies with a notice provision when it "communicate[s] sufficient information to enable [the other party] to reasonably conclude that the [provision] was in play and that the . . . clock was ticking. *See id.* at 410. That means "[t]he doctrine of substantial compliance excuses a party's deviations from a contractual requirement . . . if those deviations do not severely impair the purpose of the requirement." *S. Tex. Elec. Coop. v. Dresser-Rand Co.*, 575 F.3d 504, 508 (5th Cir.

2009) (applying Texas law).  A defect in the mode by which notice was sent will substantially comply with a notice provision if the content of the communication has put the party on notice.  *See Barbier v. Barry*, 345 S.W.2d 557, 562 (Tex. Civ. App.—Dallas 1961, no writ).

Martin Marietta sent a royalty check addressed to Wilma Minarcik on April 12, 2017.  But Wilma had died in January 2017, and her land passed to her heirs: Sam and Gary O'Callaghan.  Consequently, on April 12, 2017, Wilma was not the lessor of the Minarcik land—Sam and Gary O'Callaghan were. But Martin Marietta never sent a check to the O'Callaghans in 2017. So, Martin Marietta never made its required royalty payment—because the money never passed to the O'Callaghans—nor tendered one—because tender is not made in Texas when the funds are not given to the person holding the debt—in 2017.  *See Rowlett*, 325 S.W.2d at 923; *Dewees*, 15 S.W. at 30.

Martin Marietta contends that the April 12 tender discharged its royalty obligation because paragraph six of the lease provides that "[n]otwithstanding the death of Lessor, or any of them, the payment of royalties when due hereunder within the time and in the manner provided herein shall be binding upon the heirs . . . of lessor."  Martin Marietta misreads that portion of paragraph six.  That part of the Gravel Lease says that a royalty payment sent "in the manner provided herein" will bind the lessor's heirs.  Paragraphs six and sixteen state that payments and tenders must be made to the lessor and the lessor only.

A payment or tender—such as Martin Marietta's April 12 check—made to someone other than the lessor is not made "in the manner provided" by the Gravel Lease.  The sentence in paragraph six that Martin Marietta relies on would apply only had Martin Marietta paid Wilma Minarcik before her death, and the O'Callaghans tried to claim an additional payment.  Therefore, Martin Marietta did not pay or tender royalties to the lessor (Sam and

No. 23-20023

Gary O'Callaghan) on or before April 16, 2017.[12]

*2. Martin Marietta received adequate notice of non-payment and failed to cure within ten days.*

On May 15, 2017, Gary O'Callaghan emailed Martin Marietta asking it to "please send the 2017 royalty payment to [his] attention at the address listed below." Yet Martin Marietta never sent either of the O'Callaghans a royalty payment in 2017. Rather, Martin Marietta contends that the email could not serve as notice of non-payment because, contrary to paragraph sixteen, it was sent as an email.[13] It is true that paragraph sixteen requires notice be "delivered in person or . . . posted by certified or registered mail." But Texas law is clear that notice substantially complies with the terms of a contract even when it is not delivered in the precise manner the contract contemplates. *See Barbier*, 345 S.W.2d at 562.

In *Barbier*, a Texas appellate court held that a party had substantially complied with a notice provision when it sent a writing that adequately informed the counterparty even where the written notice was not sent by registered mail as required by the contract. *See id.* Here too, Gary O'Callaghan's email was not sent in the manner prescribed by the Gravel Lease, but it was received and understood by Martin Marietta, and it unequivocally identified

---

[12] Martin Marietta also contends that, because Elmen did not become the lessor until August 10, 2018, Elmen does not have standing to claim that the O'Callaghans did not receive a royalty payment. That contention lacks merit because, as discussed above, failure to cure a missed royalty payment after receiving adequate notice terminates the Gravel Lease automatically. Therefore, if Martin Marietta had failed to cure a missed royalty payment at any point, it no longer has any rights to the Minarcik land, and Elmen has standing to seek a declaratory judgment to that effect.

[13] Martin Marietta does not dispute that the email constituted a writing as required by the Gravel Lease. *Cf. James*, 650 S.W.3d at 409 ("[W]hen a contract requires written notice . . . substantial compliance with that requirement may not be achieved in the absence of a writing.").

the missing royalty payment.  Therefore, as a matter of Texas law, Gary O'Callaghan's email fulfilled the "purpose of the [notice] requirement" and substantially complied with paragraphs six and sixteen of the Gravel Lease. *See Dresser-Rand*, 575 F.3d at 508.  Martin Marietta was on notice of its missed payment on May 15, 2017, and had ten days to tender or pay the O'Callaghans.  It did not.

Martin Marietta contends that it cured this missed payment by offering to issue a check to Sam O'Callaghan once he sent it a W-9 tax form.  But Texas law is clear that "tender is an *unconditional* offer," and a payment occurs only when "money *passes* from the debtor to the creditor . . . and the creditor [receives] it." *See Baucum*, 370 S.W.2d at 866 (emphasis added); *Rowlett*, 325 S.W.2d at 923 (emphasis added).  Martin Marietta fell short of tendering payment because its offer was conditioned on Sam O'Callaghan's returning a W-9 form.  And Martin Marietta did not pay Sam O'Callaghan because the money never passed to him.  Contrary to Martin Marietta's assertions, the W-9 form was not necessary to pay or tender the check to the O'Callaghans:  The Gravel Lease made no mention of requiring a W-9 form, and the IRS outlines steps a payor can take in the absence of the form.[14]

In sum, the undisputed facts show that Martin Marietta failed to pay royalties in 2017, received adequate notice of this failure, and did not cure within ten days of that notice.  Therefore, the Gravel Lease terminated ten days after Martin Marietta received Gary O'Callaghan's email, and summary judgment in favor of Elmen is warranted.[15]

---

[14] *See* 26 U.S.C. § 3406(a); I.R.S. Pub. 1281 (Rev. 3-2017), *Backup Withholding for Missing and Incorrect Name/TIN(s)*, 2017 WL 4317150, at *1-3 (Jan. 1, 2017); *Moore v. Hickenlooper*, 723 F. App'x 582, 585–86 (10th Cir. 2018) (rejecting the argument that the absence of a W-9 form excused nonpayment of an award).

[15] Because Martin Marietta's non-payment in 2017 terminated the Gravel Lease,

No. 23-20023

\* \* \* \* \* \*

The magistrate judge and district judge reached the right result. The summary judgment for Elmen and the denial of summary judgment for Martin Marietta are AFFIRMED.

---

we need not address Elmen's contention that Martin Marietta also missed royalty payments in other years.