**AFFIRMED IN PART AND REVERSED AND RENDERED IN PART and Opinion Filed April 26, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00752-CV**

**TEKWAY, INC., Appellant**
**V.**
**PINNACLE TECHNICAL RESOURCES, INC., Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-14497**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Garcia
Opinion by Justice Garcia

In this commercial dispute, appellee Pinnacle Technical Resources, Inc. sued appellee Tekway, Inc. for breach of contract and declaratory judgment, and Tekway asserted several counterclaims. After a bench trial, the trial judge rendered judgment for Pinnacle. Tekway appeals. We reverse the award of declaratory relief to Pinnacle and render judgment that Pinnacle's claims for declaratory relief are denied, but otherwise we affirm the judgment.

## I. BACKGROUND

**A.     Facts**

The following facts are drawn from the evidence introduced at trial unless otherwise indicated.

**1.     The Parties' Business Relationship**

Pinnacle is in the workforce-solutions industry. It helps large companies like AT&T with workforce needs including IT staffing. When such a company needs services, it publishes a requisition. Sometimes Pinnacle responds to the requisition by submitting resumes of Pinnacle's own employees. If the company selects a Pinnacle employee, it pays Pinnacle for the worker's services, and Pinnacle in turn pays the worker. In other cases, Pinnacle relies on a subcontractor like Tekway to provide resumes in response to a requisition. If the company selects a subcontractor's employee, it pays Pinnacle for the worker's services, Pinnacle pays a fee to the subcontractor, and the subcontractor pays the worker. Depending on the situation, the worker remains an employee of Pinnacle or the subcontractor as the case may be. Pinnacle has over 2,000 employees, and it interacts with thousands of subcontractor suppliers like Tekway.

In 2014, Pinnacle began doing business with Tekway. Pavan Kumar was Tekway's operations manager at all times relevant to this case. Effective February 28, 2019, Pinnacle and Tekway entered a Supplier Subcontractor Agreement (the Agreement) that specifically listed AT&T as the client. The gist of the Agreement

was that Tekway would provide qualified candidates, referred to as "Contractors," to perform work for Pinnacle and AT&T. Section 2 provided that either Pinnacle or Tekway could terminate the Agreement without cause at any time with two weeks' advance written notice to the other party. It also provided that Pinnacle could terminate the Agreement immediately for cause, which the Agreement defined as a material breach of the Agreement. Section 14 gave Pinnacle the right to audit Tekway's records relating to the services provided, and it stated that Tekway's refusal to cooperate with an audit or failure to provide requested records would allow Pinnacle to terminate the agreement for cause. Pinnacle's audit rights lasted during the Agreement's term and for five years following the last date on which services were provided for Pinnacle and its client.

Under the Agreement, the process of placing Contractors at AT&T went as follows. AT&T would send Pinnacle a work order for a specific Contractor. The work order would include a start date, an end date, and a bill rate from Pinnacle to AT&T. Then Pinnacle would issue a purchase order to Tekway generally mirroring the work order from AT&T. The Pinnacle–Tekway purchase order would recite a "Regular Rate" for the Contractor that was the rate at which Pinnacle agreed to pay Tekway. Each Pinnacle–Tekway purchase order recited that it "shall be incorporated into and become a part of the" Agreement.

## 2.    Genesis of The Controversy

In the summer of 2019, a controversy arose involving two unhappy Tekway Contractors that had been placed at AT&T through Pinnacle. These Contractors were named Gopi Potla and Sandeep Davuluri. Both of them were from India, and they worked for AT&T in Illinois. Potla was allowed to stay in the United States under an H-1B work visa. If he lost that visa, he would have to return to India. The evidence indicated that Davuluri was also in the United States under a type of immigration visa.

Potla and Davuluri disliked working for Tekway, and in June 2019 they approached an AT&T manager named Denise Perez to ask if they could change their "vendor," meaning Tekway. Perez said that she would contact Pinnacle about their question. On or about July 1, 2019, Perez spoke to Pinnacle employee Rebecca Abraham and asked whether Contractors could change vendors. Abraham told Perez that they could and that it happened all the time. Perez asked Abraham if she could give Abraham's contact information to Potla and Davuluri, and Abraham said that she could.

Before the end of August 2019, it was arranged that Potla and Davuluri would continue their assignments at AT&T but would do so through a different supplier called Pro IT. Abraham worked with Potla, Davuluri, and Pro IT to make Pro IT a Pinnacle supplier and to get new purchase orders for Potla and Davuluri to work under.

On August 24, 2019, Kumar found out that Potla and Davuluri were planning to leave Tekway but continue working for AT&T through Pinnacle. On August 25, Kumar sent an email to Pinnacle's president and several other Pinnacle employees stating that Tekway was terminating its services "with 'CAUSE'" and "with a 2 week termination notice." Later that same day, he sent a separate, longer email to several Pinnacle employees complaining about Pinnacle's conduct and indicating that Tekway was willing to sue to protect its interests. The evidence also includes a termination letter dated August 28, 2019, on Tekway letterhead stating, "This letter is a confirmation of termination of our services with Pinnacle Technical Resources, with a 2 week notice." The letter bears a "Pinnacle received" stamp dated September 5, 2019.

On August 27, Potla sent Kumar an email resigning from Tekway with two weeks' notice. Kumar replied that same day, accepting Potla's resignation effective immediately. It appears that Davuluri communicated his resignation to Tekway around the same time; the evidence includes an August 28 email from Kumar to Davuluri accepting Davuluri's resignation effective immediately.

On August 28, Pinnacle sent Tekway a letter via email demanding to audit certain records by September 5. Tekway responded by email on September 5. On September 9, Pinnacle replied with an email stating that a few items appeared to be missing.

On September 11, Pinnacle filed this lawsuit against Tekway and also sent Tekway a letter stating that the Agreement was terminated for cause based on Tekway's inadequate response to Pinnacle's audit demand.

## B.   Procedural History

### 1.   The Claims

At the time of trial, Pinnacle's live petition asserted claims against Tekway for breach of contract and declaratory judgment.

Tekway's live pleading asserted counterclaims against Pinnacle for breach of contract, declaratory relief, civil conspiracy, and tortious interference with contract.

### 2.   Judgment and Findings

After a five-day bench trial, the trial judge signed a final judgment in Pinnacle's favor. The judge awarded Pinnacle actual damages of roughly $306,000, plus attorneys' fees and interest. The judgment also included three items of declaratory relief in Pinnacle's favor:

- On September 11, 2019, Pinnacle properly and immediately terminated the Agreement for cause because of Tekway's material breaches of the Agreement.

- The for-cause termination of the Agreement released four former Tekway employees (Potla, Davuluri, Kruthika Agarwal, and Vishal Burra) from any non-competition agreements with Tekway.

- Prior to September 11, 2019, Tekway had not terminated the Agreement.

The judgment further ordered Tekway to take nothing on its counterclaims.

The trial judge signed findings of fact and conclusions of law the same day she signed the final judgment. The findings and conclusions included the following:

- Tekway breached the Agreement in eight different ways, the following three of which caused damages to Pinnacle:

    + On or around August 31, 2019, Tekway breached the Agreement by moving four Contractors (Lakshmi Alluri, Devi Bellam, Smitha Chaparala, and Stevenson Sunchu) who had previously worked through Pinnacle to a competitor of Pinnacle called Collabera, Inc. This breach caused Pinnacle damages of $18,938.51.

    + Tekway breached the Agreement by failing to indemnify Pinnacle for amounts Pinnacle paid for AT&T's defense in Illinois lawsuits Tekway filed against AT&T. This breach caused Pinnacle damages of $268,388. (The judge did not specify when Tekway committed this breach, but the evidence indicates that Pinnacle did not begin paying for AT&T's defense until November 2019 at the earliest.)

    + Tekway breached the Agreement by failing to indemnify Pinnacle for amounts Pinnacle paid Potla, Davuluri, Agarwal, and Burra after those Contractors demanded that Pinnacle pay them amounts that they had earned but Tekway had failed to pay. This breach caused Pinnacle damages of $18,561.04. (The judge did not specify when Tekway committed this breach, but the evidence indicates that the Contractors did not begin presenting their claims to Pinnacle until November 2019.)

- Tekway failed to establish a breach of the Agreement by Pinnacle, and Pinnacle did not materially breach the Agreement.

- Any breach by Pinnacle was excused by Tekway's prior material breaches.

- Tekway could not recover breach-of-contract damages from Pinnacle because Tekway's actions in terminating the various Contractors involved in the controversy negated the element of proximate cause.

–7–

- Tekway could not recover breach-of-contract damages from Pinnacle related to Pinnacle's alleged late payment of amounts owed to Tekway under the Agreement because Tekway failed to mitigate its damages by complying with the audits.

Tekway timely appealed the final judgment.

## II. ISSUE AND ARGUMENTS PRESENTED

The "Issue Presented" section of Tekway's appellant's brief presents a single issue on appeal. Within that single issue, however, we discern five distinct arguments, and the argument section of Tekway's brief confirms our impression. We paraphrase those arguments as follows:

1. The evidence is legally and factually insufficient to support the trial judge's rejection of Tekway's defense that Pinnacle committed a prior material breach of the Agreement. Accordingly, the trial judge erred by failing to rule that any breach by Tekway was excused.

2. The evidence is legally and factually insufficient to support the trial judge's findings that Tekway did not terminate the Agreement before Pinnacle did. Accordingly, the trial judge erred by finding that Tekway breached the Agreement after its termination.

3. The evidence is legally and factually insufficient to support the trial judge's findings and conclusions that (i) Tekway's Contractors were released from their non-competition agreements with Tekway when Pinnacle terminated the Agreement, and (ii) Tekway breached the Agreement by failing to release Contractors from their non-competition agreements.

4. The trial judge erred by determining that the Agreement entitled Pinnacle to hire Contractors Potla, Davuluri, Agarwal, and Burra, and that Pinnacle did in fact hire Burra

5. The trial judge erred by ruling that Tekway was obligated to indemnify Pinnacle for (i) the attorneys' fees that AT&T incurred defending itself in Tekway's Illinois lawsuits and

(ii) sums Pinnacle paid Tekway's former Contractors for allegedly unpaid wages.

### III. STANDARD OF REVIEW

#### A. The Trial Judge as Fact Finder

We review a trial judge's fact findings under the same legal and factual sufficiency standards that apply to a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In a bench trial, the trial judge is the sole judge of the witnesses' credibility. *Weisfeld v. Tex. Land Fin. Co.*, 162 S.W.3d 379, 380 (Tex. App.—Dallas 2005, no pet.). The judge may accept or reject all or any part of a witness's testimony. *Id*. at 380–81.

#### B. Legal Sufficiency

When an appellant attacks the legal sufficiency of the evidence to support an adverse finding on an issue on which it did not have the burden of proof, it must show that no evidence supports the finding. *Guillory v. Dietrich*, 598 S.W.3d 284, 293 (Tex. App.—Dallas 2020, pet. denied). When evidence is so weak that it does no more than create a surmise or suspicion of the matter to be proved, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Id*. The evidence is legally sufficient if it is sufficient to enable reasonable and fair-minded people to reach the finding under review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (jury findings). In conducting our review, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *Id*. at 822. We must credit evidence favorable to the finding if a

reasonable person could, and we must disregard contrary evidence unless a reasonable person could not. *Id*. at 827.

When an appellant challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which it had the burden of proof, it must show that the evidence establishes as a matter of law all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); *see also Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 235 (Tex. 2019) (appellant must show that the evidence conclusively established the fact as a matter of law). If there is no evidence to support the finding, we then review the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem. Co.*, 46 S.W.3d at 241. We sustain the point only if the contrary proposition is conclusively established. *Id.*

## C.  Factual Sufficiency

When an appellant challenges the factual sufficiency of the evidence to support an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate that there is insufficient evidence to support the adverse finding. *See Hoss v. Alardin*, 338 S.W.3d 635, 651 (Tex. App.—Dallas 2011, no pet.) (jury findings). In reviewing the challenge, we consider all the evidence in the record and set the finding aside only if the evidence supporting the finding is so weak or the finding is so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See id*.

When an appellant appeals the factual sufficiency of the evidence supporting an adverse finding on an issue on which it had the burden of proof, it must show that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. We must consider and weigh all of the evidence, and we set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that the finding is clearly wrong and unjust. *Id*.

## D. Conclusions of Law

We review a trial court's legal conclusions de novo. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). An erroneous conclusion of law will not require reversal if the controlling findings of fact support a correct legal theory. *Id*.

## IV. ANALYSIS

**A. Tekway's First Argument: Did the trial judge err by failing to find that Pinnacle materially breached the Agreement before Tekway breached it?**

**1. Summary of the Argument**

Tekway first argues that the trial judge erred by rejecting Tekway's prior-material-breach defense to Pinnacle's claims. According to Tekway, Pinnacle materially breached the Agreement in three ways:

1. by transferring Tekway Contractors Potla and Davuluri to a new employer during an active Pinnacle–Tekway purchase order,

2. by transferring Tekway Contractors Agarwal and Burra to new employers during active Pinnacle–Tekway purchase orders, continuing to have those Contractors perform services for

–11–

AT&T, and then failing to pay Tekway for those post-transfer services, and

3.   by failing to timely pay Tekway roughly $187,000 due for services that Tekway Contractors provided to AT&T while those Contractors were still Tekway employees.

Tekway contends that these material breaches excused Tekway from any further performance under the Agreement, such as complying with Pinnacle's August 28, 2019 audit demand. Thus, Tekway attacks the trial judge's conclusion of law 16, which recites, "Pinnacle did not materially breach the Supplier Agreement," and conclusion of law 24, which recites, "Tekway failed to establish a breach of the Supplier Agreement by Pinnacle," as well as a few other similar findings and conclusions.

Pinnacle responds that its conduct regarding Contractors Potla, Davuluri, Agarwal, and Burra did not breach the Agreement or any purchase order; accordingly, that conduct necessarily could not constitute a prior material breach. As for Tekway's argument that Pinnacle committed a prior material breach of the Agreement by paying the $187,000 late, Pinnacle responds that Tekway failed to prove when Pinnacle's obligation came due. Thus, Pinnacle contends, Tekway failed to prove that Pinnacle committed this alleged breach before Tekway breached the Agreement.

### 2.   Applicable Law

The elements of a breach-of-contract claim are (i) a valid contract, (ii) performance or tendered performance by the plaintiff, (iii) breach by the

–12–

defendant, and (iv) damages sustained by the plaintiff as a result of that breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). "A breach of contract occurs when a party fails to perform an act it has explicitly or impliedly promised to perform." *Gaspar v. Lawnpro, Inc.*, 372 S.W.3d 754, 757 (Tex. App.—Dallas 2012, no pet.).

Prior material breach is an affirmative defense to a breach-of-contract claim. *Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 852 (Tex. App.—Dallas 2005, pet. denied); *see also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006) (referring to prior material breach as an affirmative defense). Whether a breach is material is ordinarily a fact question. *Bartush-Schnitzius Foods Co. v. Cimco Refrig., Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (per curiam). Five factors are relevant to the materiality determination:

 (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

 (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

 (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

 (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances;

 (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 199 (Tex. 2004) (per curiam) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 241 (AM. L. INST. 1981)).

### 3. Application of the Law to the Facts

### a. The Transfer of Contractors Potla and Davuluri

Tekway argues first that Pinnacle committed a material breach of the Agreement and purchase orders in the July–August 2019 timeframe by transferring Tekway Contractors Potla and Davuluri to another employer before the "end dates" listed on their Pinnacle–Tekway purchase orders. We note that Pinnacle contests Tekway's use of the word "transfer"; in Pinnacle's view it is more accurate to say that these Tekway employees quit or were terminated and then began working for another employer. We use the word "transfer" in this opinion solely for convenience.

We start by reviewing the relevant evidence regarding Pinnacle's conduct as to Potla and Davuluri.

As of summer 2019, Potla and Davuluri were providing services to AT&T under separate Pinnacle–Tekway purchase orders, each with an "End Date" of October 8, 2020. There was evidence that Potla and Davuluri were both unhappy working for Tekway. Potla and Davuluri told AT&T employee Denise Perez that they wanted to work for an employer other than Tekway. Tekway does not challenge the trial judge's finding that Potla and Davuluri located the company that became their new employer, Pro IT. The trial judge also found that Pinnacle was not

"involved in directing Mr. Potla and Mr. Davuluri to Pro IT." Although Tekway challenges the sufficiency of the evidence to support this finding, we reject that challenge. Potla testified that (1) he found Pro IT, (2) he met Pro IT's chairman through a mutual friend, (3) he was the person who introduced Pro IT to Pinnacle, and (4) no one at Pinnacle ever told Potla about Pro IT. Potla also testified that he told Davuluri that he had reached out to Pro IT. Davuluri testified that no one from Pinnacle introduced him to Pro IT. The trial judge was entitled to credit their testimony. *See Weisfeld*, 162 S.W.3d at 380.

Evidence, including testimony by Pinnacle's general counsel Erin Stewart, further showed that Pinnacle employee Rebecca Abraham worked with Potla, Davuluri, and Pro IT to make Pro IT a Pinnacle supplier and to get new purchase orders for Potla and Davuluri to work under. Stewart also testified that Pinnacle facilitated visa transfer requests for Potla and Davuluri, in order to have their immigration visas transferred from Tekway to Pro IT. Potla testified that he began working for Pro IT immediately after Kumar accepted Potla's resignation, which emails showed happened on August 27, 2019. Davuluri testified that he started working for Pro IT on August 26, 2019, and an August 28, 2019 email from Kumar accepted Davuluri's resignation effective immediately.

Pinnacle argues that its conduct, as found by the trial judge and supported by the evidence viewed in the light most favorable to Pinnacle, simply did not breach any contract provision. For the reasons stated below, we agree with Pinnacle that

Tekway has not shown that Pinnacle's conduct described above breached the Agreement.

The only contract language that Tekway relies on are the various Contractors' "end dates" that appear in the Pinnacle–Tekway purchase orders, which Pinnacle's general counsel testified are incorporated into the Agreement. An example from Potla's purchase order follows:

10/20/2017

To: Tekway Inc.

Contractor: Gopi Krishna Potla

Start Date: 10/23/2017                          End Date: 10/8/2020

Regular Rate: $53.00                            OT Rate (if applicable):

Job Description: Network/Data Engineer

Project Type:

☑ Staff Augmentation                ☐ SOW

Project/Client Name: AT&T (fmr SBC)

Tekway contends, in essence, that the "End Date" term means that Pinnacle promised not to do anything, for the duration of a Pinnacle–Tekway purchase order, to help a Tekway employee (1) quit Tekway during an active Pinnacle–Tekway purchase order, (2) join a new employer, and (3) continue to work for the same Pinnacle client. But Tekway points to nothing in the documents to justify reading such a promise by Pinnacle into the phrase "End Date." We will not rewrite the

parties' contract by inserting provisions that the parties could have included, nor will we imply restraints for which the parties did not bargain. *See LG Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632, 638 (Tex. App.—Dallas 2012, pet. denied).

In attempting to show a breach by Pinnacle, Tekway relies heavily on a July 5, 2019 email by Pinnacle employee Rebecca Abraham. She and Davuluri had previously exchanged emails about his desire to change employers, and on July 3 she wrote that all Pinnacle would have to do is "partner with the new vendor and have them sign our ATT agreement." But in her July 5 email, Abraham backtracked and wrote the following:

> Hi Sandeep,
>
> I have spoken with Todd and the contracts team and we have hit a bit of a snag.
>
> Our contract with Tekway does not allow vendor transfers under the same assignment.
>
> So what we will need you to do is either get written permission from Tekway of the approved transfer or unfortunately we will need to wait until the end of your current engagement at AT&T.
>
> Please let me know what you decide. Thanks!

Tekway argues that this email constitutes an admission that the Agreement forbade Pinnacle from helping a Tekway Contractor change employers during an ongoing Pinnacle–Tekway purchase order.[1]

---

[1] We note that extrinsic evidence of a contract's meaning cannot be considered unless the contract is ambiguous. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450–51 (Tex. 2008) (per curiam). We conclude that the "End Date" provisions in the purchase orders do not unambiguously prohibit Pinnacle's conduct at issue in this case, and we assume without deciding that the Agreement is ambiguous on that point. Thus, we consider the extrinsic evidence admitted at trial.

We disagree that the July 5, 2019 Abraham email is dispositive. Abraham cited no contract provisions and offered no explanation for her apparent conclusion that the Agreement forbade Pinnacle from allowing Contractors to change employers during active purchase orders. And Pinnacle's general counsel Erin Stewart testified that, despite Abraham's email, "[t]here is simply no language anywhere in the contract that states what Ms. Abraham is indicating here." Stewart further explained that Abraham's reference to getting Tekway's permission represented the least risky way to handle employees who wanted to change employers, because without that permission a "messy back and forth" situation can develop. Finally, Stewart testified that the "End Date" term in the purchase orders is only an estimate and that it represents the latest date on which billing can happen under that purchase order unless it is amended or replaced. She further explained that the end date does not guarantee work for the Contractor for the entire duration of the purchase order; it is "a maximum date not a guarantee date." A purchase order can end before the end date if, for example, the client terminates the particular project for budgetary reasons. Moreover, employees can come and go, quit or get fired, so the purchase order does not represent a firm obligation by Tekway to provide the particular Contractor.

We conclude that Tekway has not shown that the trial judge erred by refusing to find that Pinnacle's conduct related to Potla's and Davuluri's changes of employer breached the Agreement. Thus, this prior-material-breach argument fails.

### b. Contractors Agarwal and Burra

Tekway also asserts that Pinnacle committed a prior material breach of the Agreement by transferring Contractors Agarwal and Burra before the end dates of their purchase orders and not paying Tekway for their subsequent work for AT&T. Pinnacle responds that the trial judge reasonably rejected this argument because there was evidence that Pinnacle terminated the Agreement before Agarwal and Burra changed their employers.

Tekway's argument focuses on Pinnacle's alleged failure to pay Tekway for Agarwal's and Burra's work, and that argument runs as follows: In the Agreement, Pinnacle promised to pay Tekway for a Contractor's services up to the termination of the relevant Pinnacle–Tekway purchase order. Although Pinnacle purported to terminate the Agreement for cause on September 11, 2019, Pinnacle did not terminate Agarwal's and Burra's purchase orders, and Agarwal and Burra continued providing services for AT&T after September 10, 2019. Thus, Pinnacle was obligated to pay Tekway for those services. Pinnacle did not pay and thus breached the Agreement.

We reject Tekway's argument because even if Pinnacle breached the Agreement by failing to pay Tekway for Agarwal's or Burra's work, Tekway has not shown that this breach was material. There was evidence of the following facts:

- Pinnacle notified Tekway by a September 27, 2019 email that Agarwal's purchase order was terminated as of September 24, 2019.

–19–

- On October 8, 2019, Pinnacle notified Tekway by email that Pinnacle was exercising its right under the Agreement to hire Burra directly.

Thus, the trial judge could reasonably conclude that Pinnacle had no obligation to pay Tekway for Agarwal's work after September 24 or Burra's work after October 8.

Even assuming that Pinnacle owed Tekway a contractual obligation to pay for Agarwal's and Burra's services to AT&T rendered between September 11, 2019, and September 24, 2019 (in Agarwal's case) and October 8, 2019 (in Burra's case), we conclude that Tekway has not shown that any failure to make those payments were material breaches of the Agreement. The time periods involved were brief, involving two weeks of work by Agarwal and about four weeks of work by Burra. Whether a contract breach is material requires consideration of several factors outlined in cases such as *Mustang Pipeline Co.*, 134 S.W.3d at 199. Although Tekway lists the materiality factors in its brief, it does not show how they apply to the facts of this alleged breach.

We conclude that Tekway has not shown that the trial judge erred by failing to find that Pinnacle's conduct relating to Agarwal and Burra was a material breach of the Agreement. Thus, this argument does not support Tekway's prior-material-breach defense.

### c.      Pinnacle's Failure to Pay for Contractors' Work

Finally, Tekway argues that Pinnacle committed a prior material breach by failing to pay Tekway amounts owed for services rendered to AT&T by six Tekway Contractors (Potla, Davuluri, Agarwal, Burra, Santosh Chenkapur, and Srikanth Nadipalli)—services that were apparently rendered before Pinnacle purported to terminate the agreement for cause on September 11, 2019. The trial judge found that Pinnacle ultimately paid Tekway for those services in November 2020 and that Pinnacle had properly withheld the payment up to that point pursuant to various sections of the Agreement.

Pinnacle responds that Tekway's argument fails because Tekway does not show when Pinnacle's payment obligation fell due. Tekway cites § 4 of the Agreement, which states, "Payment will be made within five (5) business days of Pinnacle's receipt of payment from the Client, unless otherwise specified in the Payment Method section." Pinnacle contends that this term was superseded by the following unnumbered clause on page one of the Agreement: "Payment Terms: Pinnacle will pay Supplier within ten (10) days of Client approval of timesheets, with a 1% early pay discount applied." But regardless, Pinnacle continues, Tekway did not prove the payment-due date under either provision.

Under the applicable standards of review, we conclude that Pinnacle is correct: Tekway did not prove as a matter of law that Pinnacle's payment obligation fell due before Tekway breached the Agreement by failing to comply with its audit

obligations, nor did the great weight and preponderance of the evidence support that fact. *See Dow Chem. Co.*, 46 S.W.3d at 241, 242.

In its opening appellate brief, Tekway cites testimony in which Pinnacle's general counsel, Stewart, acknowledged that Pinnacle withheld funds from Tekway until November 2020 "pending review of the documents requested in the audit and assessment of Pinnacle's potential exposure and liability under those audit provisions." But this testimony does not establish when Pinnacle's payment obligation came due, much less that it came due before Tekway's breaches.

In its appellate reply brief, Tekway asserts that Pinnacle admitted in its appellee's brief that it did not timely pay Tekway. We disagree. Pinnacle acknowledged that it withheld payment from Tekway, but it did not concede that its payment obligation came due before Tekway breached the Agreement. Indeed, the very passage of Pinnacle's brief cited by Tekway insists that Tekway failed to prove when Pinnacle's payment obligation came due.

In its reply brief, Tekway cites additional evidence. For example, Stewart testified that Pinnacle was "withholding all the payments related to Tekway beginning on August 28th, 2019." But this testimony does not establish that Pinnacle actually owed any payments to Tekway on August 28 or on any particular date. Stewart went on to explain that in the morning on August 28, "Tekway had reached out to the client and sent them some very inappropriate communication[s] and we put the vendor on hold pending the outcome of the audit we issued that same day."

Thus, the trial judge could reasonably have concluded that on August 28 Pinnacle decided to stop making payments to Tekway, but that the testimony did not establish that any payments were owed on that date or on any particular date.

Tekway also cites a September 11, 2019 email from Potla to Rebecca Abraham in which Potla asked her to "hold the pay from 27th August, instead of paying Tekway until my transfer process is complete with ProIT." That same day, Abraham responded that she had sent in the request. But again, this email string does not prove when Pinnacle's payment obligation to Tekway became due under the Agreement—that is, it does not show when AT&T paid Pinnacle for Potla's work or when AT&T approved Potla's timesheets.

Tekway also cites testimony that refers to a September 10, 2019 demand letter from Tekway to Pinnacle for amounts allegedly due. But the Tekway demand letter does not show when the demanded amounts actually came due under the Agreement, and in any event the trial judge was not required to accept the facts stated therein as true. *See Intec Sys., Inc. v. Lowrey*, 230 S.W.3d 913, 920 (Tex. App.—Dallas 2007, no pet.) ("The trial court as factfinder weighs the evidence . . . .").

We conclude that Tekway has not shown that the trial judge erred by refusing to find that Pinnacle committed a prior material breach of the Agreement by failing to timely pay Tekway the sums discussed above.

### 4.     Conclusion

We reject Tekway's first argument on appeal.

**B. Tekway's Second Argument**

**1. Summary of the Argument**

The trial judge granted declaratory relief that (1) Tekway did not terminate the Agreement before September 11, 2019; (2) Pinnacle properly terminated the Agreement for cause on September 11, 2019, based on Tekway's material breaches of the Agreement; and (3) Pinnacle's for-cause termination of the Agreement released Potla, Davuluri, Agarwal, and Burra from any non-competition agreements those Contractors had with Tekway.

Tekway argues that these rulings are erroneous because Tekway terminated the Agreement first via an email it sent to Pinnacle on August 25, 2019. Although § 19 of the Agreement required Tekway to send notices to Pinnacle by personal delivery with signed receipt, by overnight courier with signature required, or by registered or certified mail, return receipt requested, Tekway contends its email termination was effective because the email substantially complied with the notice provision. Accordingly, Tekway concludes, Tekway terminated the Agreement first, and the trial judge therefore erred by determining that (1) Tekway materially breached the Agreement and (2) Potla, Davuluri, Agarwal, and Burra were released from their non-competition agreements with Tekway.

Pinnacle responds that Tekway's August 25, 2019 attempt to terminate the Agreement by email was ineffective because it did not strictly comply with the Agreement's notice requirements.

## 2. Applicable Law

The Texas Supreme Court recently addressed the substantial-compliance doctrine in *James Construction Group, LLC v. Westlake Chemical Corp.*, 650 S.W.3d 392 (Tex. 2022). The court stated the rule as follows: "[A] party's minor deviations from a contractual notice condition that do not severely impair the purpose underlying that condition and cause no prejudice do not and should not deprive that party of the benefit of its bargain." *Id*. at 406. (The court further held that, as a matter of law, oral notice does not substantially comply with a written-notice requirement, *id*. at 409, but that holding is not relevant to this case.)

Additionally, the *James Construction* court favorably cited two of our opinions applying the substantial-compliance doctrine to contractual notice requirements. In *Barbier v. Barry*, a contract required notice of cancellation to be sent by registered mail. 345 S.W.2d 557, 560 (Tex. App.—Dallas 1961, no writ). A party canceled the contract by a written letter that was received by the other party but was not sent by registered mail. We held that the cancellation was nevertheless effective under the substantial-compliance doctrine. *Id*. at 562. And in *Texas Utilities Electric Co. v. Aetna Casualty & Surety Co.*, a bond required the surety to send notice of cancellation to TUEC's office in Allen, Texas. 786 S.W.2d 792, 793 (Tex. App.—Dallas 1990, writ denied). But the surety instead sent notice to TUEC's office in Mesquite, Texas, where it was delivered to an authorized TUEC agent. We held

–25–

as a matter of law that the notice of cancellation was nevertheless effective under the substantial-compliance doctrine. *Id*. at 794.

### 3. Application of the Law to the Facts

#### a. The trial judge erred.

We agree with Tekway that its August 25, 2019 email termination of the Agreement was effective because the evidence established that the email substantially complied with the Agreement's notice provision.

Section 19 of the Agreement required Tekway to give any notices contemplated by the Agreement in writing, and it further provided that notices would be effective when (1) personally delivered with signed receipt, (2) mailed by overnight courier with signature required, or (3) mailed by registered or certified mail, return receipt requested. The Agreement further provided that notices to Pinnacle should be sent to its general counsel at a specific address. Although there was no evidence at trial that Tekway complied with § 19, the evidence was uncontroverted that Tekway gave Pinnacle notice of termination via email on Sunday, August 25, 2019. Pinnacle's general counsel testified that she received the email that morning.

Our *Barbier* opinion supports Tekway's position that it substantially complied with § 19. *Barbier* involved a contract clause that required notice by registered mail. We held that a notice by a written letter that was actually received substantially complied with the notice clause. 345 S.W.2d at 562. In this case, the Agreement

–26–

required Tekway to give notice by certain methods that required Pinnacle to acknowledge receipt in some fashion. But Kumar's email to several Pinnacle employees was actually received by, at a minimum, Pinnacle's general counsel—who was the person contractually designated to receive notices for Pinnacle. *Barbier*, then, indicates that Tekway's termination email substantially complied with the Agreement's notice provision.

We next consider whether the Texas Supreme Court's opinion in *James Construction* affects the outcome. The opinion indicates that a deviation from a contractual notice condition does not substantially comply with the condition if the deviation severely impairs the purpose underlying the condition and causes prejudice. 650 S.W.3d at 406. In this case Pinnacle adduced some evidence explaining the purpose of the Agreement's notice provision. Specifically, Stewart testified that Pinnacle wanted a degree of formality in notices from suppliers for three reasons: (1) to protect suppliers from doing something in a telephone call or email they might later regret, (2) to protect the continuity of services that the suppliers provide to Pinnacle and the customer, and (3) to ensure that notices are received by the right people at Pinnacle. But we conclude that the evidence does not support a conclusion that Tekway's use of email to give its termination notice severely impaired the purpose of the notice provision or prejudiced Pinnacle. The evidence is undisputed that the proper person to receive notice for Pinnacle received the termination notice the same day it was sent. The record contains many

–27–

subsequent communications demonstrating that Tekway's decision was not a passing whim that Tekway needed to be protected from. And there is no evidence that Tekway's use of email rather than a more formal method of communication harmed the continuity of services to Pinnacle or any of its customers.

We conclude that Tekway is correct and that the evidence established that Tekway's August 25, 2019 email termination of the Agreement was effective under the substantial-compliance doctrine. Given the two-week notice provision in § 2, which was referenced in Kumar's email, this means that the Agreement terminated on Sunday, September 8, 2019—which was before Pinnacle terminated the Agreement for cause on September 11, 2019. The trial judge's findings and conclusions to the contrary were erroneous.

### b. Relief on Appeal

Having concluded that the trial judge erred, we next consider what relief Tekway is entitled to. If possible, we render the judgment the trial judge should have rendered. *See* TEX. R. APP. P. 43.2(c).

### (1) Declaratory Relief

Under our holding above, the three items of declaratory relief granted by the trial judge to the contrary were erroneous and must be reversed. Those declarations are:

> [O]n September 11, 2019, Pinnacle properly and immediately terminated the "Supplier Agreement" "for cause" because of Tekway, Inc.'s material breaches of the Supplier Agreement.

–28–

[B]ecause of the "for cause" termination of the Supplier Agreement, [Potla, Davuluri, Agarwal, and Burra] were released from any non-competition agreements with Tekway, Inc.

[P]rior to September 11, 2019, Tekway, Inc. had not terminated the Supplier Agreement.

(Footnotes omitted.)

Tekway does argue, however, that its termination of the Agreement has the more far-reaching consequence that it cannot have committed any breaches after that termination. We cannot agree, because the three damage-causing breaches found by the trial judge involved contractual obligations that expressly survived the Agreement's termination.

Again, the trial judge found that Tekway committed three breaches of the Agreement that caused damages to Pinnacle:

1. Tekway breached the Agreement's noncompetition provision, § 5, by placing four Contractors previously placed through Pinnacle with a Pinnacle competitor;

2. Tekway breached the Agreement's indemnity provision, § 11, by failing to indemnify Pinnacle for attorneys' fees that AT&T incurred defending against Tekway lawsuits; and

3. Tekway also breached § 11 by failing to indemnify Pinnacle for sums Pinnacle paid to former Tekway employees because Tekway failed to properly pay them.

Section 23 of the Agreement expressly provides that both § 5 and § 11 survive the end of the Agreement:

Sections 1, 5, 9, 11, . . . and any other provision that would logically extend beyond the term shall survive the termination or rescission of the Agreement and will continue in full force and effect after this Agreement is terminated.

Thus, under § 23, Tekway's duties under § 5 and § 11 continued even after Tekway terminated the Agreement. Accordingly, we conclude that Tekway has not shown that its termination of the Agreement defeated Pinnacle's breach-of-contract claims.[2]

**(2)    Attorney's Fees**

Finally, we consider whether our reversal of the declaratory relief portion of the judgment requires reversal of the award of attorney's fees to Pinnacle. For two reasons, we conclude it does not.

First, we conclude that, under the trial judge's findings, all fees recovered by Pinnacle are supported by Pinnacle's successful breach-of-contract claims. The trial judge ordered Tekway to pay Pinnacle's attorney's fees under Agreement § 17, which required Tekway to pay Pinnacle's "legal expenses relating to litigation, including court costs, expenses, attorneys' fees, and expert witness fees," if Tekway were found to have breached the Agreement. The trial judge found that Pinnacle's reasonable and necessary attorney's fees in the past were $554,122.53, and she also found and awarded additional amounts as conditional appellate attorney's fees. She further made findings regarding segregation of those fees, both trial and appellate, as follows:

---

[2] Tekway does not ask us to render declaratory judgment in its favor. We decline to do so without briefing explaining the precise relief that the evidence compels. Also, we do not see how a declaratory judgment that Tekway's email termination of the Agreement was valid would "terminate the uncertainty or controversy giving rise to the proceeding." TEX. CIV. PRAC. & REM. CODE ANN. § 37.008.

–30–

> a. 20 percent of fees were incurred in pursuing the indemnity concerning AT&T;
>
> b. 5 percent of fees were incurred in pursuing the indemnity for the Former Tekway Employees;
>
> c. 75 percent of fees otherwise related to pursuing or defending claims related to the Supplier Agreement;
>
> d. 5 percent of fees related to pursuing Plaintiff's declaratory judgment claim; and
>
> e. 75 percent of fees otherwise related to defending against Tekway's tort claims.

We construe findings (a) through (c) to mean that all of Pinnacle's attorney's fees advanced its pursuit or defense of claims for breach of the Agreement, and we construe findings (d) and (e) to mean that 5% of those fees also advanced Pinnacle's declaratory-judgment claims and 75% of the fees also advanced Pinnacle's defense of Tekway's tort claims. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006) (attorney's fees incurred to advance claims or defenses for which fees are recoverable can be recovered even if the same legal services also advanced claims or defenses for which fees cannot be recovered). Again, Pinnacle was entitled to recover its attorney's fees if Tekway were found to have breached the Agreement. The trial judge found that Tekway breached the Agreement, and we are not disturbing those findings. Accordingly, we conclude that our reversal of the declaratory-relief portion of the judgment does not affect Pinnacle's recovery of attorney's fees based on the judge's segregation-of-fees findings.

Second, we conclude that reversal is not required under the declaratory-judgment statute's fee-shifting provision. Under that statute, the trial judge may

–31–

award attorney's fees "as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. Thus, when an appellate court's judgment changes the extent to which the parties prevail on their declaratory-judgment claims, the appellate court will generally reverse the award of attorney's fees and remand to the trial judge for reconsideration of what is equitable and just. *See Farmers Grp., Inc. v. Geter*, 620 S.W.3d 702, 712 (Tex. 2021). In this case, we are reversing the award of declaratory relief to Pinnacle, but we are otherwise affirming the judgment in its favor. We conclude that Pinnacle remains the prevailing party for all practical purposes, and that it is unnecessary to reverse the fee award for reconsideration of whether the award is equitable and just.

### 4. Conclusion

We agree with Tekway's second argument on appeal and conclude that it entitles Tekway to reversal of the declaratory relief granted by the trial judge but no other relief.

## C. Tekway's Third Argument

### 1. Summary of the Argument

The trial judge found (in finding 14 and conclusion 22) and declared in the judgment, that Pinnacle's termination of the Agreement for cause released Tekway's Contractors from any noncompetition agreements that would limit their ability to work for Pinnacle or AT&T. The trial judge also determined (in conclusion 8(b)) that Tekway breached the Agreement by failing to release its former employees from

–32–

any non-competition obligations, but she did not award Pinnacle any damages for this breach.

Tekway argues that the judge's rulings are erroneous because they do not comport with the Agreement. According to Tekway, the Agreement requires Tekway to release a Contractor from a noncompetition agreement only if:

(1) Pinnacle terminates the Agreement for cause,

(2) the Contractor at issue is currently working under a purchase order,

(3) Pinnacle terminates the purchase order, and

(4) Pinnacle hires the Contractor directly.

Tekway contends that element (3) was not satisfied as to Contractors Potla, Davuluri, Agarwal, and Burra because Pinnacle did not terminate their purchase orders. Tekway also contends that elements (2) and (4) were not satisfied as to Potla and Davuluri because (i) they had been fired by Tekway and so were no longer working under a purchase order and (ii) they were hired by Pro IT rather than Pinnacle.

In a footnote, Tekway also asserts that finding 19 is immaterial and is supported by insufficient evidence. That finding states that the Agreement required Tekway to use best efforts to get two weeks' notice from any Contractor who quit or was terminated, and that Tekway failed to do so.

**2.    Analysis and Conclusion**

Based on Tekway's second argument, we are already reversing the trial judge's declaration that Pinnacle's purported for-cause termination of the Agreement released Tekway's Contractors from any noncompetition agreements.

Tekway does not explain how it was otherwise harmed by the findings and conclusions it challenges in its third argument. Nor do we perceive any harm to Tekway flowing from those findings and conclusions.

Because Tekway has not shown any harm flowing from the above-described findings and conclusions, we reject Tekway's third argument on appeal. *See Brown v. Frontline Asset Strategies*, No. 05-21-00207-CV, 2022 WL 1421040, at *2 (Tex. App.—Dallas May 5, 2022, no pet.) (mem. op.) (holding that appellant bears the burden of demonstrating harm).

**D.    Tekway's Fourth Argument**

**1.    Summary of the Argument**

In finding 15, the trial judge found that the Agreement gave Pinnacle the right to hire a Tekway Contractor after the Contractor provided 960 hours of service for Pinnacle. In finding 34, the judge found that by August 31, 2019, Contractors Potla, Davuluri, Agarwal, and Burra had provided more than 960 hours of service to Pinnacle. And in conclusion 29, the judge determined that the Agreement entitled Pinnacle to hire Potla, Davuluri, Agarwal, and Burra, and that Pinnacle did in fact hire Burra.

Tekway argues that findings 15 and 34 are immaterial. It also argues that those findings and conclusion 29 are supported by insufficient evidence.

Pinnacle responds that Tekway's argument is insufficient to show that these determinations are supported by insufficient evidence. It also contends that the determinations are immaterial and present no basis for reversal.

### 2. Analysis and Conclusion

Tekway does not explain how it was harmed by the findings and the conclusion it challenges in its fourth argument. Nor do we perceive any harm to Tekway flowing from those determinations.

Because Tekway has not shown harm, we reject Tekway's fourth argument on appeal. *See id*.

## E. Tekway's Fifth Argument

### 1. Summary of the Argument

In conclusions 8(c) and 8(d), the trial judge determined that Tekway breached contractual indemnity obligations to Pinnacle in two ways:

c. Failing to indemnify Pinnacle for [Potla's, Davuluri's, Agarwal's, and Burra's] indemnity demands to Pinnacle based on Tekway's failure to pay wages and failing to comply with federal and state obligations regarding the payment of wages to [them]; [and]

d. Failing to indemnify Pinnacle for the lawsuits [Tekway] filed against AT&T[.]

The judge found that Pinnacle's damages from the first breach were $18,561.04 and its damages from the second breach were $268,388.00.

As to the AT&T claim, Tekway argues that the Agreement's indemnity clause simply did not require Tekway to indemnify Pinnacle against AT&T's demand for

indemnification; thus, Tekway's refusal to indemnify Pinnacle against that demand is not a breach. As to the sums Pinnacle paid Potla, Davuluri, Agarwal, and Burra, Tekway argues that it did not have to indemnify Pinnacle against those Contractors' claims because Pinnacle refused to pay Tekway for those Contractors' work for over a year.

Pinnacle responds that Tekway's argument fails because Tekway has not challenged two findings, 78 and 79, that support the indemnity awards. We reject this argument, concluding that Tekway's brief adequately addresses all necessary findings. On the merits, Pinnacle contends that AT&T's demand for a defense against Tekway's claims is indeed covered by the Agreement's indemnity clause. And it contends that its delay in paying Tekway for the Contractors' work is not a valid basis for Tekway to refuse to indemnify Pinnacle for sums Pinnacle paid on the Contractors' wage claims.

### 2.    Applicable Law and Text of the Indemnity Clause

We construe indemnity agreements according to the normal rules of contract construction. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 353 (Tex. 2020). Our primary concern is to ascertain and give effect to the parties' intentions as expressed in the instrument. *Id*. We may not expand their rights or responsibilities beyond the limits expressed in the contract. *Id*. We construe indemnity agreements strictly to give effect to the parties' intent as expressed in the agreement. *Id*.

The Agreement's indemnity clause is § 11, and it provides as follows:

. . . Supplier will defend, indemnify, and hold harmless Pinnacle . . . from and against all claims, actions, suits, damages, liabilities, losses, judgments, awards, and expenditures including attorneys' fees arising out of or relating to:

> (i) the negligent acts or omissions or the performance or failure of performance by Supplier . . . under this Agreement, PO, or Client Addendum;

> (ii) [S]upplier's failure to comply with any labor, employment, employee benefit, tax, or other laws or regulations for payment of compensation, including benefits or salary asserted by Supplier's employees, agents, subcontractors, or other representative[s];

> (iii) damage to or destruction of tangible property to [sic] Pinnacle or third parties;

> (iv) bodily injury or death to the extent arising directly out of any negligent or wrongful act or omission of Supplier or its employees, agents, subcontractors, or other representative[s]; or

> (v) Supplier's failure to comply with any law, statute, ordinance, administrative order, rule, or regulation.

(Paragraph breaks added for clarity.)

We note that the indemnity clause requires Tekway to indemnify Pinnacle against losses, expenditures, and the like "relating to" the five specified subject matters. The phrase "relating to" is a broad term. *See RSR Corp. v. Siegmund*, 309 S.W.3d 686, 701 (Tex. App.—Dallas 2010, no pet.). Thus, the indemnity clause covers Pinnacle's losses, expenditures, and the like that have a connection with the listed subject matters. *See id*.

### 3. Analysis of the AT&T Indemnity Claim

We first consider Pinnacle's claim that Tekway had to indemnify Pinnacle for sums that Pinnacle paid to cover AT&T's defense costs in Illinois litigation prosecuted by Tekway. The trial judge awarded Pinnacle $268,338 on that claim.

#### a. Relevant Evidence

There was evidence of the following facts. On September 10, 2019, Tekway sued Potla and Davuluri in Illinois state court, seeking to enforce noncompetition agreements against them. On October 25, 2019, Tekway joined AT&T as a defendant in that suit. On July 10, 2020, Tekway filed a separate lawsuit against AT&T in Illinois. In both cases, Tekway sued AT&T for tortiously interfering with (i) the Agreement between Pinnacle and Tekway and (ii) Tekway's employment agreements with Potla, Davuluri, Agarwal, and Burra.

Other evidence showed that AT&T demanded indemnity from Pinnacle for AT&T's defense costs in Tekway's Illinois lawsuits. Pinnacle accepted that demand and paid attorneys to defend AT&T against Tekway's claims in those lawsuits.

#### b. Application of the Law to the Facts

Tekway asserts that Pinnacle's payment of AT&T's defense costs in Tekway's Illinois lawsuits did not arise of or relate to any of the five indemnification situations listed in § 11 of the Agreement.

In response, Pinnacle argues that its payment of AT&T's defense costs satisfies § 11(v), quoted above, because Pinnacle's expenditures arose from or

related to Tekway's failure to comply with a law, statute, ordinance, administrative order, rule, or regulation. Specifically, Pinnacle argues that (1) Tekway's claims against AT&T depended on the enforceability of Tekway's noncompetition agreements with its Contractors and (2) the trial judge specifically concluded that those agreement were unenforceable under governing Illinois law.

In its reply brief, Tekway argues that it is not obligated to indemnify Pinnacle for its expenditures on AT&T's defense costs because that would amount to indemnification "for AT&T, not Pinnacle."

Based on the following logic, we conclude that Tekway has not shown error:

- Tekway promised to indemnify Pinnacle for Pinnacle's expenditures related to Tekway's "failure to comply with any law."

- Tekway's employment agreements with its Contractors contained noncompetition agreements that were unenforceable under governing Illinois law. The trial judge so concluded, and Tekway does not challenge those conclusions on appeal.

- Thus, by entering those unenforceable noncompetition agreements, Tekway failed to comply with Illinois law. *See comply*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981) ("conform or adapt one's actions (as to another's wishes)"); *comply*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To do what is required or requested; to conform, submit, or adapt to (a command, demand, requirement, etc.)").

- Tekway's claims against AT&T in the two Illinois lawsuits included claims for tortious interference with Tekway's employment contracts with the Contractors.

- Thus, when Pinnacle paid AT&T's defense costs in the Illinois lawsuits, those expenditures related to—that is, had some connection with—Tekway's failure to comply with Illinois law,

–39–

specifically its entering into unenforceable employment contracts with the Contractors and then suing for interference with those contracts. That is sufficient to trigger Tekway's indemnity obligation under § 11.

We also reject Tekway's suggestion in its reply brief that the award of Pinnacle's expenditures for AT&T's defense costs amounted to indemnification of AT&T rather than Pinnacle. Pinnacle adduced testimony that it actually paid more than $268,388 for defense costs that AT&T incurred in the Illinois lawsuits. Because Pinnacle actually paid those amounts, we disagree that the judgment's award of $268,388 amounted to indemnification of AT&T rather than Pinnacle.

In sum, we reject Tekway's attack on the judgment's $268,388 award based on Tekway's failure to indemnify Pinnacle for AT&T's defense costs in Tekway's Illinois lawsuits.

### 4. Analysis of the Contractor Indemnity Claim

We next consider Pinnacle's claim that Tekway had to indemnify Pinnacle for sums that Pinnacle paid to Contractors Potla, Davuluri, Agarwal, and Burra based on their demands for payments of wages that Tekway owed them but failed to pay. The trial judge awarded Pinnacle $18,561.04 on this claim.

### a. The Trial Judge's Findings and the Parties' Arguments

The trial judge found that Tekway did not pay Potla, Davuluri, Agarwal, and Burra "in compliance with state and federal wage and hour laws because the payments were not timely and/or never made by Tekway." The judge further found that (1) those Contractors demanded that Pinnacle pay them the amounts Tekway

–40–

had failed to pay and (2) Pinnacle paid the Contractors sums totaling $18,561.04 to avoid violations of state and federal wage and hour laws.

On appeal, Tekway asserts that the trial judge's findings are supported by insufficient evidence. However, it does not explain this assertion, and we consequently reject it. *See* TEX. R. APP. P. 38.1(i).

Tekway also argues that its duty to indemnify Pinnacle was excused or negated by Pinnacle's failure to timely pay Tekway roughly $186,000 that Pinnacle owed Tekway under the Agreement for the Contractors' work for AT&T.

Pinnacle responds that § 6 of the Agreement required Tekway to pay its employees "in accordance with its established payroll schedule." Indeed, we note that § 6 goes on to state, "Supplier may not withhold or delay payment to Contractors."

In its reply brief, Tekway adds that Pinnacle's payments to the Contractors "confirms that Pinnacle failed to comply with the . . . Agreement and timely pay Tekway."

### b.    Analysis

We reject Tekway's argument. Tekway points to nothing in the indemnity clause that excuses Tekway from indemnifying Pinnacle against Tekway Contractor wage claims if Pinnacle pays Tekway late. To the contrary, § 6 of the Agreement appears to impose an absolute duty on Tekway to timely pay its Contractors for their work: "Supplier may not withhold or delay payment to Contractors."

–41–

Tekway's argument appears to amount to a contention that Pinnacle did not really incur any losses when it paid some $18,561.04 on the Contractors' claims because Pinnacle was withholding far more than that amount—over $186,000—that it owed to Tekway for the Contractors' work. But this contention does not reckon with the fact, found by the trial judge, that Pinnacle eventually paid Tekway the amount due under the Agreement. Thus, the trial judge could reasonably conclude that Pinnacle's payments to the Contractors totaling $18,561.04 were actual expenditures by Pinnacle in addition to what it paid Tekway, and that the tardiness of Pinnacle's payment was not a valid reason to deny Pinnacle claim for indemnity under § 11.

For these reasons, we reject Tekway's attack on the judgment's $18,561.04 award based on Tekway's failure to indemnify Pinnacle against the Contractors' wage claims.

### 5. Conclusion

For the foregoing reasons, we reject Tekway's fifth argument on appeal.

## V. DISPOSITION

We reverse the portion of the final judgment that grants declaratory relief in favor of Pinnacle, and we render judgment that Pinnacle's requests for declaratory relief are denied. We affirm the remainder of the judgment.

220752f.p05

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

–43–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TEKWAY, INC., Appellant

No. 05-22-00752-CV     V.

PINNACLE TECHNICAL
RESOURCES, INC., Appellee

On Appeal from the 193rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-14497.
Opinion delivered by Justice Garcia.
Justices Partida-Kipness and
Pedersen, III participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** the following three paragraphs in the trial court's judgment:

- The paragraph ordering that "Pinnacle Technical Resources, Inc. is entitled to a declaration that on September 11, 2019, Pinnacle properly and immediately terminated the 'Supplier Agreement' [footnote omitted] 'for cause' because of Tekway, Inc.'s material breaches of the Supplier Agreement."

- The paragraph ordering that "Pinnacle Technical Resources, Inc. is entitled to a declaration that because of the 'for cause' termination of the Supplier Agreement, the 'Former Tekway Employees' were released from any non-competition agreements with Tekway, Inc. [footnote omitted]"

- The paragraph ordering that "Pinnacle Technical Resources, Inc. is entitled to a declaration that prior to September 11, 2019, Tekway, Inc. had not terminated the Supplier Agreement."

We **RENDER** judgment that appellant Pinnacle Technical Resources, Inc.'s requests for declaratory relief are denied. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that appellee Pinnacle Technical Resources, Inc. recover its costs of this appeal and the full amount of the trial court's judgment from appellant Tekway, Inc. and from the cash deposit in lieu of supersedeas bond. After the judgment and all costs have been paid, the clerk of the district court is directed to release the balance, if any, of the cash deposit to the person or entity that made the deposit.

Judgment entered this 26th day of April 2024.